581 P.2d 1295

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Freddie J. PADILLA,
Defendant-Appellant.**

No. 3433.

Court of Appeals of New Mexico.

July 5, 1978.

Ronnie H. Ricks, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Sammy J. Quintana, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of criminal sexual penetration in the second degree "by the use of force or coercion when the perpetrator is aided or abetted by one [1] or more persons[.]" Section 40A–9–21(B)(3), N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1975). We (1) discuss the claim that defendant was denied a public trial and (2) answer other issues summarily.

*Public Trial*

N.M.Const., art. II, § 14 gives the defendant in a criminal prosecution the right to a public trial. During the victim's testimony, the courtroom was cleared of disinterested persons. Defendant contends this denied him a public trial and the trial court's action was an abuse of discretion.

Defendant's trial was in no sense similar to the secret proceedings disapproved in *In Re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Defendant was tried by a jury; no one was excluded from the courtroom except during the testimony of the victim, and the persons excluded at that time were those who were "disinterested". We do not know who was excluded under the category of "disinterested", nor do we know all of the persons that remained in the courtroom. We do know that counsel was present and that defendant's wife was present when the victim testified in the presence of the jury.

The tapes show the following. Before the victim was called to the stand, the prosecutor requested the courtroom be closed to disinterested persons because the victim was a young woman who lost her virginity in the events being tried and was exceedingly apprehensive. There is testimony from the examining physician to the effect that the victim was in fact a virgin prior to the events in question. The trial court denied the prosecutor's request.

The victim began her testimony in open court. When asked to describe the encounter with defendant, she began sobbing and in an anguished voice cried out, "I can't say it . . . ." The trial court immediately sent the jury to the jury room and then told

"all persons in this courtroom who are not particularly interested in this trial to step out." Defense counsel stated that his client's wife would like to sit in; the trial court was agreeable.

At this time, a possible threat to the victim's mother was brought to the trial court's attention. The mother was not a witness. The trial court ordered a deputy to watch the mother.

Defendant then stated:

I think that in a sense this prejudices my case. I think that in the sense that there are special precautions taken it gives credence to this lady's story. I think any person who makes a false allegation has to be subject to public scrutiny. And I think it prejudices my case. The jury is going to see that nobody is here and the jury is going to think that that lends credibility or credence. And I think it does affect my case in an adverse way.

The trial court responded:

What the court has done is rather extreme. I understand that and I just . . because of the sensitivity of this particular witness I'm excluding everybody except those who have an interest in it. So it would be better then if you just stayed outside. I'd appreciate that. Thank you very much.

■ State v. Velasquez, 76 N.M. 49, 412 P.2d 4 (1966), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 95 (1966) states: "Whether the general public may be excluded from a trial is a matter resting within the discretion of the trial court". The appellate issue is whether there was an abuse of discretion. In determining whether discretion was abused, we start with the view "that the interest of a defendant in having ordinary spectators present during trial is not an absolute right but must be balanced against other interests which might justify excluding them." United States ex rel. Latimore v. Sielaff, 561 F.2d 691 (7th Cir. 1977).

Sielaff, supra, continues:

Rape constitutes an intrusion upon areas of the victim's life, both physical and psychological, to which our society attaches the deepest sense of privacy. Shame and loss of dignity, however unjustified from a moral standpoint, are natural byproducts of an attempt to recount details of a rape before a curious and disinterested audience. The ordeal of describing an unwanted sexual encounter before persons with no more than a prurient interest in it aggravates the original injury. Mitigation of the ordeal is a justifiable concern of the public and of the trial court.

Recognition that protection of the dignity of the complaining witness is a substantial justification for excluding spectators does not end our inquiry. Protection of the complaining witness from potential embarrassment does not justify any perceptible increase in the likelihood that the defendant might be convicted. The presence of this justification merely eliminates the implication as a matter of law that the defendant was prejudiced by the exclusion of spectators and leads us to the question of whether the defendant actually was prejudiced by that action.

■ In this case, there was justification for exclusion of disinterested persons from the courtroom during the victim's testimony. That justification eliminated any implication as a matter of law that defendant was prejudiced. It was up to defendant to show that he was actually prejudiced by the exclusion of disinterested persons.

■■ Defendant's claim of actual prejudice is that because of the absence of spectators during the victim's testimony "the jury is going to think that lends credibility" to the victim's testimony. This is no more than speculation; the absence of spectators might just as well have lessened the impact of the victim's testimony. After disinterested persons were excluded, the victim controlled her emotions while testifying. The record in this case does not show, and

does not suggest, that defendant was prejudiced.

There was no denial of a public trial. The trial court did not abuse its discretion in excluding disinterested persons from the courtroom during the victim's testimony.

*Issues Summarily Answered*

■■ (a) Pre-indictment delay. The offense occurred November 12, 1976; the indictment was filed June 29, 1977. A witness, claimed by defendant to be a "principal defense witness" died on September 20, 1977. Defendant contends the loss of this witness's testimony substantially prejudiced his defense. At the evidentiary hearing, defendant testified there were five other witnesses who saw everything the deceased witness could have seen. Of the five, two were named as witnesses by the defense, however, only one of them was called as a witness at the trial. Under this record, we cannot say that defendant was substantially prejudiced, either by the death of one witness, or by defendant's asserted lack of memory (contradicted by his trial testimony). The fact that the prosecutor failed to explain the delay does not aid defendant because defendant failed to show he was actually prejudiced by the delay. *State v. Jojola,* 89 N.M. 489, 553 P.2d 1296 (Ct.App. 1976).

■ (b) Admission of defendant's statement. The evidence is conflicting as to whether defendant's statement was voluntary and is also conflicting as to whether defendant ever requested counsel before making the statement. It was for the trial court to resolve the conflicts. We cannot say the trial court erred in admitting the statement. *State v. Ramirez,* 89 N.M. 635, 556 P.2d 43 (Ct.App.1976); *State v. Gruender,* 83 N.M. 327, 491 P.2d 1082 (Ct.App. 1971).

■ (c) Nondisclosure of witness. Assuming that the prosecutor was under a duty to disclose the rebuttal witness and

had failed to do so, the trial court did not abuse its discretion in allowing the rebuttal witness to testify. The trial court granted the defense request that it be provided a copy of the witness' report and then granted the defense request for a recess to study the report. The defense then called this rebuttal witness as its witness on surrebuttal. Nor did the trial court err in failing to grant a continuance; defendant never asked for a continuance. *State v. Johnson,* 91 N.M. 148, 571 P.2d 415 (Ct.App.1977).

■ (d) Admission of physical evidence. In his opening statement, defendant admitted that sexual intercourse had occurred, but contended the victim consented. Defendant objected to the admission of a rape kit into evidence, claiming it was irrelevant because the fact of intercourse was admitted. Defendant asserts the purpose of a rape kit is to ascertain if intercourse took place. There was an additional reason in this case, defendant was charged with intercourse by force. The physician who examined the victim testified that the physical evidence included within the rape kit was collected during the examination and this evidence, together with the physician's observations, was consistent with forcible intercourse. The trial court properly admitted the rape kit over the objection of relevancy.

■ (e) Sufficiency of the evidence. Defendant claims the victim's testimony is insufficiently corroborated to sustain his conviction. For the "corroboration" requirement in "rape" cases, see the discussion in *State v. Boyd,* 84 N.M. 290, 502 P.2d 315 (Ct.App.1972), cert. denied, 411 U.S. 937, 93 S.Ct. 1916, 36 L.Ed.2d 398 (1973), reh. denied, 412 U.S. 924, 93 S.Ct. 2739, 37 L.Ed.2d 151 (1973). The physician's testimony as to the victim's bruises and the victim's injuries in the pelvic area was sufficiently corroborative to sustain the conviction.

(f) Cumulative error. Defendant asserts there was an accumulation of errors which

denied him a fair trial. There was no error; defendant was not denied a fair trial.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.