735 P.2d 1156

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Steve APODACA, Defendant-Appellant.**

**No. 9692.**

Court of Appeals of New Mexico.

Feb. 26, 1987.

Certiorari Denied April 9, 1987.

Hal Stratton, Atty. Gen., Santa Fe, for plaintiff-appellee.

Scott McCarty, Albuquerque, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals from his convictions for first degree criminal sexual penetration, assault with intent to commit a felony, and aggravated assault with a deadly weapon. He raises the following issues: (1) failure to quash the indictment for grand jury improprieties; (2) violation of his right to a speedy trial; (3) failure to grant his motion for discovery; (4) failure to grant a mistrial because the jury was not sworn until the second day of trial; (5) prosecutorial misconduct during closing argument; and (6) violation of his right to a public trial. Our calendaring notice proposed summary affirmance, and defendant has filed a timely memorandum in opposition. We now affirm.

## FACTS.

A man, armed with a knife and wearing a mask, seized a twelve-year-old girl as she walked to school and forced her to perform fellatio on him. Other children told several teachers about what had taken place. Two teachers went to the location where the victim had been seized. They eventually spotted her and the man, at which time he ran and the teachers chased him.

One teacher continued the chase to a tunnel under one road, where he lost sight of the man. The teacher ran through the tunnel and met a jogger at the other side, who had seen a man come out of the tunnel. Seeing a man climbing up an embankment, the teacher and the jogger chased and caught up with him. The suspect stopped and threatened his pursuers with a pocket knife and then a tree limb. The suspect ran again, and the teacher continued to chase him while the jogger went to a nearby fire station to get help. The suspect ran down an embankment to another road toward a step van.

The teacher's statements to the police were that the man he had chased had run in front of the van and entered the van from the left or driver's side. He testified at trial that the suspect had entered the van's right side and that in his statements to the police he had meant the left side as he faced the vehicle. The van had no left or driver's side door. Defendant worked as a route man, and the van was his assigned vehicle.

During defendant's preliminary hearing, the state requested that defendant be removed from the courtroom during the victim's testimony to avoid the trauma to her of looking at defendant. The magistrate, over defendant's objection, arranged the defense table so that defendant was positioned in the corridor outside the courtroom where he could not see or hear the victim.

A bind-over order was filed in magistrate court. A criminal information charging defendant with the crimes of which he was convicted in the present case, and a separate criminal information charging defendant with crimes unrelated to the present case, were filed.

While both cases were pending against defendant, he filed a discovery motion seeking investigative reports and witness statements pertaining to a case involving a widely-publicized serial rapist. Defendant contended that he was seeking these items for the purpose of showing that the suspect in that case might have been the perpetrator of the crimes with which defendant was charged. The state informed the trial court that the suspect in the serial-

rapist case had been in custody since September 9, 1985, and the trial court denied the motion.

Defendant moved to dismiss the criminal information in this case, contending that defendant's right of confrontation had been violated since defendant was excluded from the preliminary hearing during the victim's testimony. The trial court agreed and ordered a remand for a new preliminary hearing. The criminal information in the other case was not affected by this motion.

Electing to present the case to the grand jury, the state dismissed the criminal information in this case by filing a nolle prosequi. The charges originally set out in this case were presented to the grand jury and an indictment was returned. Seven months after defendant's arrest, an order was obtained from the New Mexico Supreme Court granting the state an extension of time for commencement of trial, and trial was commenced within this time.

Upon obtaining the tape recording of the grand jury proceedings, defendant learned that one of the regular grand jurors had been excused by the prosecutor and that an alternate had then been seated by the prosecutor. After the grand jurors had been qualified, sworn, and seated as jurors, the prosecutor asked whether any of the jurors knew of the proposed witnesses. One grand juror responded that she worked at the Los Alamos Mid School and had been at work on the day of the assault. She did not state what she knew about the case or the investigation; she indicated that whatever information she had or thought she had about the case would not interfere with her service as a grand juror on that case. The prosecutor then excused this grand juror, required her to leave the grand jury room until after the case was presented to the grand jury, and designated one of the alternates to replace the regular grand juror he had excused.

Defendant filed pretrial motions to quash the indictment for alleged grand jury improprieties and to dismiss the indictment alleging that his right to a speedy trial had been violated. The trial court denied these motions.

The prosecutor requested that the trial court be closed to the public during the testimony of the victim, and that her family members be permitted to be present. Defendant offered to agree if his family members could remain in the courtroom. Over defendant's objection, the trial court agreed to clear the courtroom of all spectators, including defendant's family, but allowed the victim's family to remain in the courtroom during her testimony.

The jury was selected. The prosecutor presented his opening statement and the state's first witness testified. It was then discovered that the jury had not been sworn after it was selected. Defendant moved for a mistrial at this time, but the trial court denied the motion. Instead, over defendant's objection, the trial court swore the jury between the state's first and second witnesses and ordered the jury to consider the first witness's testimony as if they had been sworn when they heard it.

During closing argument, defense counsel called attention to the discrepancy in the teacher's statements and testimony regarding from which side the man he had chased had entered the van. During his rebuttal summation, the prosecutor stated that the teacher had no reason to lie. Defendant objected on the grounds that this statement constituted improper argument because the prosecutor was vouching for the witness's credibility. The trial court ruled that the prosecutor's argument was proper. Thereafter the jury found defendant guilty on all counts.

**GRAND JURY IMPROPRIETIES.**

There is no statutory provision for prosecutors to discharge grand jurors or to select alternates. NMSA 1978, Section 31–6–1 (Repl.Pamp.1984) provides, in pertinent part:

> The *district judge shall summon and qualify* as a panel for grand jury service such number of jurors as he deems necessary. Each grand jury shall be composed of twelve regular jurors and a sufficient number of alternates to insure the continuity of the inquiry * * *. *All deliberations shall be conducted by any twelve jurors, comprised of regular ju-*

*rors or substituted alternates.* \* \* \* The *district judge may discharge or excuse members of a grand jury and substitute alternate grand jurors as necessary.* \* \* \* [Emphasis added.]

In addition, NMSA 1978, Section 31–6–2 (Repl.Pamp.1984) provides, in pertinent part:

The *jurors shall select one* of their number *as foreman* of the grand jury \* \* \*. The *foreman, for good cause, may request the court to excuse or discharge individual grand jurors* and to replace them with alternate grand jurors as necessary \* \* \*. [Emphasis added.]

Defendant contends that although all of the regular grand jurors and the one alternate who served on the grand jury that indicted him were qualified to serve, they were not all eligible to serve. He argues that because the regular juror was not excused by the court and the alternate was not seated to serve by the court, as required by the above statutes, the alternate was not eligible to serve on the grand jury. Therefore, the indictment against him should have been quashed by the trial court. We disagree. Section 31–6–1 provides that "[a]ll deliberations shall be conducted by *any* twelve jurors, comprised of regular jurors *or substituted alternates.*" (Emphasis added.)

■ We do agree that the procedure followed in the present case was not in compliance with the procedures set out in Sections 31–6–1 and –2. However, whether this is a sufficient basis to quash the indictment depends upon whether the applicable statutes are mandatory or merely directory. *See State v. Gunthorpe,* 81 N.M. 515, 469 P.2d 160 (Ct.App.1970), *cert. denied,* 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971).

■ Statutory provisions which relate to the number of and qualifications of jurors, or which are designed to secure impartiality or freedom from unfair influences, are ordinarily deemed to be mandatory, while those which prescribe details as to the manner of selection or drawing are usually regarded as directory. *State v. Gunthorpe.* Sections 31–6–1 and –2 merely provide details as to the procedure to be followed in selecting grand jurors. Accordingly, we conclude these provisions are directory. There has been no showing of actual prejudice suffered by defendant; therefore, the trial court was correct in refusing to dismiss the indictment for grand jury improprieties. *See generally State v. Leatherwood,* 26 N.M. 506, 194 P. 600 (1920) (statutory provisions for the election of petit jurors are usually construed as directory; in the absence of prejudice, failure to comply with such provisions does not support reversal of a conviction). We note that we do not condone the practice of prosecutors discharging grand jurors or selecting alternates. However, we are persuaded that the prosecutor in this case was attempting to be fair to defendant. There is no hint of malicious overreaching, subverting the grand jury proceedings, and there has been no showing of disadvantage to defendant. *See Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981); *State v. Ballinger,* 99 N.M. 707, 663 P.2d 366 (Ct.App.1983). On these facts, the trial court should be affirmed.

## RIGHT TO A SPEEDY TRIAL.

■ Defendant argues that his right to a speedy trial was violated. On July 9, 1986, an order was obtained from the New Mexico Supreme Court granting the state an extension of time to October 15, 1986 for commencement of trial. Defendant contends that the granting of this order is irrelevant because the case was not ripe for a speedy trial motion when the order was granted. However, such orders are final and cannot be reviewed by this court. *See State v. Mazurek,* 88 N.M. 56, 537 P.2d 51 (Ct.App.1975).

## DEFENDANT'S MOTION FOR DISCOVERY.

■ Defendant's motion for discovery was raised in hearings related to the criminal informations filed against defendant in this case before indictment and in the other case, which were both later dismissed. This motion was never refiled in the present case, nor did defendant ask the

654

trial court to incorporate into the present case all motions made in the prior cases. Defendant notes that the criminal information in the other case was not dismissed until the parties were before the court on the intended first day of trial, and since the discovery motion was raised with regard to the other case, the trial court was aware that the issues raised in the discovery motion pertained to the present case as well. We are not persuaded by this. Although the trial court may have been aware that the motion raised in the previous case might be relevant to the present case, defendant's failure to file renewed motions or to invoke a ruling on this motion constituted a waiver of the issue on appeal. *See State v. Lopez*, 84 N.M. 805, 508 P.2d 1292 (1973).

## SWEARING OF THE JURY.

Defendant moved for a mistrial upon realizing that the jury had not been sworn. The state had already presented its opening statement and its first witness. The trial court refused to declare a mistrial and then proceeded to administer the oath to the jurors and ordered them to consider the first witness's testimony as if they had been sworn when they heard it.

■ There is no New Mexico case law on point. However, several out-of-state courts have addressed this issue. These courts have generally held that irregularities in the swearing of a jury may be waived and do not necessarily constitute reversible error; however, a complete failure to swear the jury cannot be waived and a conviction by an unsworn jury is generally held to be a nullity. *See State v. Godfrey*, 136 Ariz. 471, 666 P.2d 1080 (1983). Although a jury's oath is not a mere formality, *id.*, where the jury is sworn during trial, but prior to commencement or deliberations upon the verdict, the error does not warrant reversal in the absence of prejudice. *See United States v. Hopkins*, 458 F.2d 1353 (5th Cir.1972); *contra Steele v. State*, 446 N.E.2d 353 (Ind.App.1983).

■ In the present case, the jury was sworn on the second day of trial. SCRA 1986, UJI Crim. 14–123 sets out the oath administered, which was "[d]o you swear or affirm that you will arrive at a verdict according to the evidence and the law as contained in the instructions of the court?" Although the trial court should have administered the oath immediately after the jury was empaneled, the failure to do so did not constitute reversible error. *State v. Godfrey*. The oath given addresses how the jury will arrive at a verdict, and the oath was administered before the jury began to deliberate.

## PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT.

The prosecutor, as well as defense counsel, is allowed wide latitude in closing argument, and the trial court has wide discretion in dealing with and controlling closing argument. *State v. Venegas*, 96 N.M. 61, 628 P.2d 306 (1981).

■ The prosecutor's comment that the teacher "had no reason to lie" was made after defense counsel had emphasized the teacher's inconsistent statements as to the side from which the suspect entered the van. We conclude the prosecutor was commenting on an inference the jury could reasonably draw from the teacher's testimony. Therefore, it was fair comment upon the evidence. *See State v. Venegas*.

## RIGHT TO A PUBLIC TRIAL.

■ Whether the general public may be excluded from a trial is a matter resting within the discretion of the trial court. *State v. Velasquez*, 76 N.M. 49, 412 P.2d 4, *cert. denied*, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 95 (1966). The appellate issue is whether there was an abuse of discretion. *State v. Padilla*, 91 N.M. 800, 581 P.2d 1295 (Ct.App.1978). Once defendant offered to agree to the exclusion of the general public, with the exception of the victim's family and his family, it was not an abuse of discretion for the trial court to exclude everyone except the victim's family. The burden is on defendant to establish actual prejudice. *Id.*

■ Defendant claims that he was prejudiced by the exclusion of everyone except

the victim's family because "the jury is permitted to perceive the trial court as predetermining the truthfulness of the child witness and favoring the prosecution over the defendant." This is not a sufficient showing. We rejected a similar argument made by the defendant in *State v. Padilla* as being no more than speculation, noting that the absence of spectators might just as well have lessened the impact of the victim's testimony.

**CONCLUSION.**

For the foregoing reasons, we conclude that no reversible error occurred. The judgment and sentence are affirmed.

IT IS SO ORDERED.

BIVINS and GARCIA, JJ., concur.