1997-NMCA-047

940 P.2d 1204

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Rodney ARELLANO, Defendant–Appellant.**

**No. 17421.**

Court of Appeals of New Mexico.

May 1, 1997.

Certiorari Granted June 3, 1997.

**410**

Tom Udall, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

BOSSON, Judge.

1. Defendant was convicted of vehicular homicide after a trial by jury. Defendant moved to set aside the verdict because the jury had never been sworn. The district court denied the motion, and Defendant appeals. We reverse and remand for a new trial.

2. The sole issue on appeal is whether the trial court abused its discretion in refusing to grant Defendant a new trial after the verdict was returned by jurors who had not been sworn during trial. *See State v. Wittgenstein*, 119 N.M. 565, 569, 893 P.2d 461, 465 (Ct.App.1995) (standard of review); *see also* NMUJI 1997, 14–123 (oath to empaneled jurors). Although Defendant became aware of the omission during trial, he did not call it to the court's attention until after the jury returned its verdict and was finally discharged. At that point, rather than grant Defendant's motion to set aside the verdict, the court reassembled the jury, put the jury under oath, and had each juror affirm retroactively that he or she had "understood the oath was implicit during trial and it was in fact followed in finding [D]efendant guilty."

3. The State maintains that any error from this procedure was harmless and Defendant suffered no prejudice because the solemnity of jury duty was impressed upon the jurors in other ways. For example, during voir dire, the prospective jurors swore to answer questions truthfully "under penalty of law." *See* NMUJI 1997, 14–122. During trial, the jurors were instructed generally on courtroom procedures, *see* NMUJI 1997, 14–101, and on the presumption of innocence and on the State's burden of proof, *see* NMUJI 1997, 14–5060. Finally, the jurors were instructed on their duty to reach a verdict based on the evidence and the law according to the court's instructions which covers the essential elements of the juror's oath. *See* NMUJI 1997, 14–6001; NMUJI 1996, 14–6008; *cf.* NMUJI 14–123.

4. We do not agree with the State's position. If these instructions were the actual equivalent of a juror's oath, then NMUJI 14–123 would be rendered superfluous. That oath requires the juror to swear or affirm that "you will arrive at a verdict according to the evidence and the law as contained in the instructions of the court[.]" NMUJI 14–123.

**411**

The Committee commentary to NMUJI 14–123 requires that this oath "must be administered with other pretrial instructions." This language indicates to us that our Supreme Court intended to mandate the administration of this oath in addition to these other instructions and not leave it to trial court discretion.

5. We further believe that the voir dire oath, which was administered in this case during jury qualification, is not a sufficient equivalent; it serves the separate purpose of ensuring that potential jurors answer truthfully the questions on voir dire. The voir dire oath states: "Do you swear or affirm to answer truthfully the questions asked by the judge or the attorneys concerning your qualifications to serve as a juror in this case, under penalty of law?" NMUJI 14–122. This oath is preliminary only; it is directed solely to the process of selecting a jury. By comparison, the oath to the jury as it is empaneled "is an essential element of the constitutional guarantee to a trial by an 'impartial' jury." *State v. Godfrey*, 136 Ariz. 471, 666 P.2d 1080, 1082 (App.1983). It is not "a mere formality." *State v. Apodaca*, 105 N.M. 650, 654, 735 P.2d 1156, 1160 (Ct. App.1987) (quoting *Godfrey*, 666 P.2d at 1082), *overruled on other grounds by State v. Garcia*, 110 N.M. 419, 796 P.2d 1115 (Ct.App. 1990).

6. In this case, the jury was empaneled in Rio Arriba County on October 19, 1995, but was not ordered to report for jury duty for another five days and then before a different judge in Santa Fe. Although Defendant had requested that the jury be sworn at the time of selection, the empaneling judge declined to do so because the lapse of even a few days between the oath and the trial would increase the risk of mistrial from improper contacts. Under these circumstances, we cannot presume that any oath administered during voir dire would carry over into the trial and instill the same sense of duty as the oath normally administered to the empaneled jury at the beginning of trial.

7. We also do not agree that it was sufficient for the court to administer the oath after the verdict. Although the jury ultimately ratified its verdict after it was re-called and the oath administered, the fact remains that Defendant was convicted by an unsworn jury. In *Apodaca*, 105 N.M. at 654, 735 P.2d at 1160, this Court permitted a jury to be sworn on the second day of trial reasoning that: "The oath given addresses how the jury will arrive at a verdict, and the oath was administered before the jury began to deliberate." In so doing, we expressly disavowed a situation like the present when we stated that, "a complete failure to swear the jury cannot be waived and a conviction by an unsworn jury is generally held to be a nullity." *Id.* Following the clear instruction of *Apodaca*, we conclude that a delay past the rendering of the verdict is tantamount to a complete failure to administer the oath, and we so hold. The extent of the delay in our case distinguishes the authorities cited by the State. *See, e.g., People v. Clouse*, 859 P.2d 228, 233 (Colo.Ct.App.1993) (jury sworn in after commencement of trial but long before deliberations had begun); *State v. Roberge*, 155 Vt. 121, 582 A.2d 142, 143–44 (1990) (jury sworn after the prosecution had rested); *cf. Godfrey*, 666 P.2d at 1081 (jury sworn few minutes after deliberations had begun).

■ 8. We also do not agree with the court's ruling that Defendant waived the failure to swear in the jury by not objecting or that it was harmless error. The issue is not simply a challenge to juror qualification, which may be deemed waived in the absence of fundamental error or an affirmative showing of prejudice. *See State v. Sanchez*, 120 N.M. 247, 251–53, 901 P.2d 178, 182–83 (1995); *State v. Escamilla*, 107 N.M. 510, 515–16, 760 P.2d 1276, 1281–82 (1988); *State v. Aull*, 78 N.M. 607, 613, 435 P.2d 437, 443 (1967). Neither are these merely evidentiary matters in which objections must be preserved at trial. *See State v. Altgilbers*, 109 N.M. 453, 472, 786 P.2d 680, 699 (Ct.App. 1989). Rather, as *Godfrey* indicates, the issue directly relates to the fundamental constitutional guarantee to trial by an impartial jury. *Godfrey*, 666 P.2d at 1082.

■ 9. Although constitutional rights may be waived, *Hovey v. State*, 104 N.M. 667, 670, 726 P.2d 344, 347 (1986), some error is so fundamental that cannot be waived, *see State v. Holloway*, 106 N.M. 161, 163–64, 740

P.2d 711, 713–14 (Ct.App.1987) (discussing fundamental right to unanimous jury verdict). It is the function of the trial court to ensure that the accused is tried by an impartial jury. *Cf. Mathis v. State*, 112 N.M. 744, 748, 819 P.2d 1302, 1306 (1991) (referring to trial court's duty to ensure fair trial). Just as the court, not the accused, is charged with correctly instructing the jury on the essential elements of the offense, so is the court, not the accused, responsible for swearing the jury. *See State v. Osborne*, 111 N.M. 654, 661–62, 808 P.2d 624, 631–32 (1991) (failure to instruct on essential elements is fundamental error of the court and reversible even when defendant aided in the error and did not request instructions); *see also* Rule 5–607(L) NMRA 1997. Although *Osborne* does not require that failure to instruct on an essential element will necessarily require a new trial in every case, *see State v. Ortega*, 112 N.M. 554, 566–67, 817 P.2d 1196, 1208–09 (1991), it nonetheless is not waived by mere silence of counsel and will be tolerated only under exceptional circumstances. *See State v. Livernois*, 123 N.M. 128, 934 P.2d 1057 (1997) (deficiency in jury instruction inconsequential due to extensive evidence and other overlapping instructions showing jury likely did consider the missing element). Accordingly, we draw on the reasoning of *Osborne* to conclude that Defendant's failure to mention the oath in this case does not change the fundamental structural error of the court below. *See Osborne*, 111 N.M. at 662–63, 808 P.2d at 632–33; *see also Sullivan v. Louisiana*, 508 U.S. 275, 279–83, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993) (holding that deficient reasonable doubt instruction in capital murder case is structural defect in the very constitution of the trial mechanism and therefore incapable of correction by harmless error analysis).

10. We also find unpersuasive the State's reliance on *Woods v. State*, 674 P.2d 1150 (Okla.Crim.App.1984). In *Woods*, the alleged error was failure to swear the jury prior to commencement of trial. *Id.* at 1153. The court determined that the alleged error was waived when the defendant failed to raise the issue even in his motion for a new trial. *Id.* The court was also persuaded that because the verdict stated that the jury had been properly empanelled and sworn, this provided sufficient ground for the court to find that the jury had been sworn according to law. *Id.* Our situation differs in too many important respects for us to regard *Woods* as helpful authority.

11. Accordingly, we reverse the trial court's denial of Defendant's motion for a mistrial and remand for a new trial.

12. IT IS SO ORDERED.

DONNELLY and WECHSLER, JJ., concur.