This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                                                          **NO.   28,038**

**CHRIS ROMERO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant appeals from his convictions, after a jury trial, for false imprisonment, second degree criminal sexual penetration (CSP), third degree CSP, aggravated battery with a deadly weapon, and intimidation of a witness. Defendant raises five issues on appeal, contending that (1) the district court erred in denying his motion to suppress, (2) the district court abused its discretion in limiting discovery, (3) the district court erred in appointing counsel to the victim for a limited purpose, (4) the district court erred in failing to recuse itself, and (5) the State presented insufficient evidence to support Defendant's convictions. We affirm Defendant's convictions.

**DISCUSSION**

**A.    The Motion to Suppress**

On the weekend of November 5-6, 2005, the victim was allegedly kidnaped, battered, raped, and intimidated at a residence located at 3402 Bandolina in Roswell, New Mexico. On November 8, 2005, the police conducted a warrantless search of the residence, performed various forensic tests for blood, semen, and DNA, and seized certain items as evidence. The items seized and tested were taken from one of the children's bedrooms, the bathroom, the utility room, and the kitchen. The residence is owned by Defendant's cousin, Mr. Gabriel Smolky, and it is regularly occupied by Mr. Smolky and his three children. Although the police presented some testimony and

documentation that Mr. Smolky had consented to the search of the house and had provided police with the whereabouts of the key to enter, perform tests, and search while he babysat his sisters' children, the district court ruled that the consent was not valid. It is undisputed, moreover, that there were no exigent circumstances to obviate a warrant requirement at the time the search took place, two days after the alleged incidents had taken place.

Defendant contends that he has standing to contest the warrantless search of his cousin's house because he was a permissive user of the residence at the time of the incidents, he had the right to lock the door of a bedroom while he was using it, he borrowed his cousin's clothing while he was there, and he had access to the residence through the use of a hidden key. The district court disagreed and denied the motion to suppress.

Concluding that the district court's findings are supported by substantial evidence, the applicable law is correctly applied to the findings, and the findings of fact support the district court's conclusions of law, we affirm the district court's order. *See State v. Walters*, 1997-NMCA-013, ¶ 8, 123 N.M. 88, 934 P.2d 282 (filed 1996) (recognizing that the appellate court will not disturb a trial court's suppression ruling unless it appears that the ruling was erroneously premised on the law or the facts).

3

"The legality of a search questioned in a suppression hearing is generally tested as a mixed question of law and fact wherein we review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Baca*, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509. With respect to the factual review, we do not sit as trier of fact, recognizing that the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility. *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19. Therefore, we review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

Defendant's standing to challenge a search on the grounds that it violates the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution depends on whether he had a reasonable expectation of privacy in the place searched. *See State v. Leyba*, 1997-NMCA-023, ¶ 9, 123 N.M. 159, 935 P.2d 1171. Whether a defendant has standing involves two inquiries: (1) whether the defendant had an actual, subjective expectation of privacy in the premises searched; and (2) whether the defendant's subjective expectation is one that society is prepared to recognize as reasonable. *State v. Esguerra*, 113 N.M. 310, 313, 825

4

P.2d 243, 246 (Ct. App. 1991). Defendant's argument that he had "automatic standing" because he often stayed at Mr. Smolky's residence and had permission to stay there on the dates at issue, is not supported by the evidence presented in this case or by the law of New Mexico. *See Leyba*, 1997-NMCA-023, ¶ 12 n.1 (declining to reach the question of whether New Mexico should adopt the automatic standing doctrine based on the evidence presented). Based on the facts of this case and applicable New Mexico case law, we agree with the district court's holding that "[t]here is no 'automatic standing' to challenge an alleged illegal search as a substitute for a finding of an expectation of privacy," particularly where Defendant had no legally enforceable rights to the premises searched, he did not own or possess the items seized, he did not occupy the premises at the time of the search, and he knew or should have known that he had no control whatsoever over any of the premises searched or the items seized when not present.

The residence at 3402 Bandolina was owned by and was the permanent residence of Defendant's cousin, Mr. Smolky. Mr. Smolky lived at the residence with his children. Defendant lived at his mother's home located at 701 Margaret Wooldridge Road, Roswell, New Mexico. Defendant had a bedroom at his mother's home and he kept his clothing and personal effects there. While Defendant occasionally stayed overnight at Mr. Smolky's house, he referred to the house as his

"cousin's house."  Mr. Smolky testified that Defendant would usually use one of the children's bedrooms that was empty at the time.  Defendant had no regular pattern of occupancy at Mr. Smolky's residence, his presence there was generally not expected with the exception of the weekend of November 5, 2005, when Mr. Smolky asked Defendant to stay at his house to care for his pregnant dog.

While in Mr. Smolky's residence, Defendant could lock the bedroom door to keep others out of the room he was in.  Defendant was not given authority by Mr. Smolky, however, to prevent others from entering Mr. Smolky's residence, and Defendant did not have the authority to limit the access of others to the bedroom he used when Defendant was not occupying it.  Defendant knew that the bedrooms were regularly occupied by Mr. Smolky's children and that they, along with their friends and Mr. Smolky, would have access to the children's bedrooms when he was not visiting.  *See State v. Ryan*, 2006-NMCA-044, ¶ 20, 139 N.M. 354, 132 P.3d 1040 (holding that the defendant did not have a subjective expectation of privacy where coupled with his inaction to show an expectation of privacy, testimony was presented that the defendant knew others had used his room without his prior knowledge and when he was not present).  Mr. Smolky, his children, friends, and guests all had regular access to the kitchen, dining room, bathroom, or laundry room, as common

areas of the residence. Defendant does not live at his cousin's house, he does not keep his possessions there, and he has no control over any part of it when he is not present.

The items seized during the search were taken from one of the children's bedrooms, the one bathroom in the house, the utility room, and the kitchen. These items included bedding, six bottles of liquor, a washcloth, a pillow case, and a broken broom and handle. The bedding and the top half of the broomstick were collected from a child's bedroom. The six bottles of liquor were found on a shelf between the kitchen and dining room. The pink washcloth was found in the only bathroom located in the southwest corner bedroom and the bottom half of the broomstick was found inside the door to the laundry room. Nothing was seized from the bedroom designated for Defendant's use and none of the items seized belonged to Defendant.

Further, Defendant did not demonstrate any possessory interest in any item seized at the residence. *See Leyba*, 1997-NMCA-023, ¶ 16 (stating that "[u]nder the Fourth Amendment, a person may have standing to challenge the search of a place [he] does not own or occupy if [he] has the right to exclude others from the searched premises or has continuous access to the searched premised combined with a possessory interest in an item seized there").

Since we hold that the district court correctly ruled that Defendant did not have a subjective expectation of privacy in the places searched or the items seized, we need

not address whether Defendant's subjective expectation is one that society is prepared to recognize as reasonable. *Cf. Ryan*, 2006-NMCA-044, ¶ 19 (discussing both prongs of the standing test because it was "not clear whether the district court concluded that [the d]efendant had no actual expectation of privacy or whether the district court concluded that any actual expectation of privacy that [the d]efendant had was not reasonable"). We affirm the district court's decision to deny Defendant's motion to suppress.

**B.      Limiting Discovery**

Defendant contends that his due process rights were violated because the district court's discovery ruling denied him the opportunity to uncover the nature and extent of the victim's drug usage, her treatment, her associates, and her whereabouts preceding and following the alleged incidents. Defendant also argues that because the outcome in this case was highly dependent on credibility evaluations, the victim's attendance at drug rehabilitation facilities was relevant to undermine her credibility and necessary to Defendant's consent defense. Defendant asserts that the district court's limitations on discovery as to these matters violated his right to confrontation.

**STANDARD OF REVIEW**

The standard of review for evidentiary issues is abuse of discretion. *State v. Montoya*, 2005-NMCA-078, ¶ 22, 137 N.M. 713, 114 P.3d 393. An "[a]buse of

discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Stills*, 1998-NMSC-009, ¶ 33, 125 N.M. 66, 957 P.2d 51 (internal quotation marks and citation omitted). The trial court is vested with the authority to limit discovery. *See State v. Ramos*, 115 N.M. 718, 723, 858 P.2d 94, 99 (Ct. App. 1993), *modified in part by State v. Gomez*, 1997-NMSC-006, ¶ 32, 122 N.M. 777, 932 P.2d 1. A general assertion that inspection of the records is needed for a possible attack on the victim's credibility is insufficient to make a threshold showing that the defendant expects the records to provide information necessary to the defense. *State v. Luna*, 1996-NMCA-071, ¶ 9, 122 N.M. 143, 921 P.2d 950; *see also, e.g., State v. Layne*, 2008-NMCA-103, ¶ 10, 144 N.M. 574, 189 P.3d 707 (observing that the appellant has the burden of establishing an abuse of discretion with respect to the granting or denial of discovery in a criminal case).

**A. Relevant Procedural Background**

After defense counsel took the victim's initial statement, Defendant moved for a court-supervised deposition, arguing that the victim had become tearful and refused to speak when asked about rehabilitation programs she had attended for methamphetamine use. In addition, the prosecutor had stated that the victim was not going to answer any further questions that were not relevant to the case. The district court judge scheduled a court-supervised deposition to take place at the county jail,

and, as discussed below, appointed Mr. Ramon Garcia as counsel for the victim for the limited purpose of making objections and asserting privileges on her behalf at the deposition. According to the prosecutor and Mr. Garcia, the victim did not appear for the deposition at the jail because she was being threatened by two individuals who had been in jail with Defendant. The district court judge decided not to reschedule the deposition at the jail, and instead, asked counsel to work together to reschedule. Thereafter, during the victim's statement, Mr. Garcia refused to allow her to answer questions about her attendance, purpose, completion, or failure to complete drug rehabilitation as privileged information. Subsequently, Defendant filed a motion to compel answers to certain questions about the victim's drug rehabilitation.

At the district court's request, Defendant submitted a list of seven questions:
1. What rehabilitation programs have you attended?
2. What is the name and address of the program?
3. What dates did you attend?
4. Was the attendance voluntary or court ordered?
5. Did you complete the program?
6. If not, why not? [and]
7. Were any psychological assessments or evaluations completed as part of the rehabilitation and, if so, by which psychologist, psychiatrist or mental health expert?

When asked by the district court about the relevance of the information to the facts of this case, defense counsel argued the victim's drug use may explain why the victim could not remember some of the details surrounding the alleged events, and that the information was to be used to attack the victim's credibility.

The district court ordered the victim to answer the first six questions, but ruled that she would not be required to answer question number seven because it would violate her rights under Rule 11-504 NMRA (physician-patient and psychotherapist-patient privilege). Mr. Garcia forwarded an audio tape of the victim's statement for the district court to review. After reviewing the tape, the district court issued a letter ruling noting that the victim had disclosed that after the events at issue in this case, and after reaching the age of majority, she voluntarily admitted herself to the Walker House, a drug rehabilitation program, for a one-month program, which she successfully completed at or near her nineteenth birthday. The letter further indicated that the victim had also made disclosures relating to her juvenile years but that the details regarding these programs would not be disclosed to Defendant because the prejudicial effect of her conduct as a juvenile would substantially outweigh any probative value of the information to the issues of the case.

At trial, following direct examination of the victim, defense counsel asked the district court to allow the victim to be questioned on her previous drug history and rehabilitation as a juvenile. Defendant argued that the State had "opened the door" to all of the victim's drug rehabilitation history when, during direct testimony, the victim stated that in December 2005 following the events at issue in this case, she had attended the Walker House. The district court asked defense counsel to explain the

11

relevancy of the questions and to indicate what evidence he had that the victim used drugs from the time she was eighteen until the time of the events at issue in this case. Defense counsel responded that he had no evidence with regard to that time frame but he had a statement from the victim that she had been in drug rehabilitation previously. The district court ruled that in accordance with his prior letter ruling, the prejudicial effect of any inquiry into drug rehabilitation during the time when the victim was a juvenile substantially outweighed its probative value. *See* Rule 11-403 NMRA. The district court also considered that allowing inquiry into matters that occurred when the victim was a juvenile would "unnecessarily expand the scope of the trial" into collateral details regarding the victim's drug use since she was thirteen years old. The district court further ruled that the State had not opened the door to the victim's juvenile drug use because the victim had attended the Walker House as an adult. We agree with the district court's rulings.

**B.    Analysis**

First, we affirm the district court's letter ruling that determined that the victim was not required to answer question number seven, which required her to state whether she had had psychological evaluations relating to her drug use and rehabilitation, and thereafter to provide copies of them.  Rule 5-503(C) NMRA provides:  "Unless otherwise limited by order of the court, parties may obtain

discovery regarding any matter, *not privileged*, which is relevant to the offense charged or the defense of the accused person." (Emphasis added.) Rule 11-504(B) NMRA provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, including drug addiction, among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Mr. Garcia advised the victim to assert her privilege with regard to confidential communications made for the purpose of her diagnosis or treatment for drug use. The district court agreed that the rules of criminal procedure and the rules of evidence supported the victim's assertion of this privilege under the circumstances of this case. We affirm the district court's decision not to compel the victim to respond to question number seven in Defendant's motion to compel. In addition, our review of the victim's testimony reveals no abuse of discretion in the district court's observation that the victim's inability to recall every detail of the alleged rapes was not atypical or pathological such that admission of the evidence should have been produced for in-camera review or was necessary to Defendant's defense. *See Luna*, 1996-NMCA-071, ¶ 10 (holding that the defendant's request may not have been sufficiently particularized or compelling to justify in-camera review where the defendant's motion

for disclosure of the victim's counseling records stated that the defendant "believes that it is likely that [the v]ictim revealed information to the therapist which may be relevant to issues of her credibility" (internal quotation marks omitted)); *cf. State v. Gonzales*, 1996-NMCA-026, ¶ 21, 121 N.M. 421, 912 P.2d 297 (holding that it was not an abuse of discretion for the trial court to require disclosure of the records sought to determine whether they contained information that the victim may have suffered cognitive difficulties which would affect her credibility where the record specifically indicated that the victim had a history of blackouts from alcohol).  Here, unlike in *Gonzales*, defense counsel's assertions about the need for the victim's drug rehabilitation records were based solely on unspecific allegations that the evidence would "likely lead to discovery of other witnesses," and that such information was generally "helpful" to the fact finder in determining the witness's credibility.

In addition, we affirm the district court's decision not to allow Defendant to cross-examine the victim both before trial and during trial about her juvenile drug use or any rehabilitation programs she attended as a juvenile.  First, we find no abuse of discretion in the district court's ruling that the fact the victim revealed that she attended the Walker House when she was an adult after the events at issue in this case—which occurred when she was an adult—did not "open the door" to Defendant questioning her on juvenile drug use and rehabilitation.

Second, in her pre-trial statements and at trial, the State and Defendant fully explored the fact that at the time leading up to and during the alleged events, the victim was drinking, taking drugs, "hanging out" with "bad people," she knew a lot about buying and using drugs, had run away from home, and thought there was a warrant out for her arrest for an unreported hit-and-run accident. As such, Defendant was not denied the right to confront the victim and to cross-examine her about her behavior and her credibility as relevant to the events at issue in this case. *See State v. Meadors*, 121 N.M. 38, 49, 908 P.2d 731, 742 (1995) (upholding the district court's limitation of cross-examination concerning the extent of the victim's drug abuse, in light of its limited probative value and the prejudicial effect of the evidence). In addition, several witnesses, who were friends of Defendant and had been with Defendant and the victim off and on during the applicable weekend, testified at trial that they thought the victim was a flirt, into drugs and alcohol with them, and not telling the truth about being afraid of Defendant, about what happened during the weekend, and about not previously having sex with Defendant. Defendant thus had a reasonable opportunity to explore before the jury all aspects of the victim's character and credibility in the light Defendant wanted to present them.

Third, the victim was an adult at the time of the alleged incidents. Thus, the specific details of her juvenile drug use and rehabilitation programs were only

tangentially relevant to proving or disproving the elements of the crimes committed by Defendant against the victim in this case. *See, e.g., State v. Baca*, 115 N.M. 536, 540, 854 P.2d 363, 367 (Ct. App. 1993) (holding that specific instances of the victim's violent conduct are not admissible under Rule 11-405(B) NMRA to prove the victim acted violently on the specific occasion). We cannot disagree with the district court that the admission of this evidence would have unnecessarily expanded the scope of the trial. Full exploration of the victim's drug abuse history would have been misleading or confusing to the jury in a situation where the victim admitted to drinking and abusing drugs around the time of the alleged incidents. Her juvenile drug use history is collateral to whether the alleged events took place on November 5-6, 2005, in accordance with her testimony. *See, e.g., State v. Martin*, 101 N.M. 595, 601-02, 686 P.2d 937, 943-44 (1984) (observing that evidence of the witness's prior criminal history and drug use had no probative value in relation to the defendant's actions toward decedent).

We affirm the district court's rulings on this issue.

**C. Appointing Counsel for Victim**

Defendant contends that the trial court erred in appointing counsel for the limited purpose of protecting the victim's rights while she was being deposed prior to trial. We affirm.

16

The district court appointed Mr. Garcia as temporary counsel for the victim with regard to Defendant's efforts to have her disclose privileged information about her treatment and evaluation for drug abuse as a juvenile as well as after the events of this case. *See* Rule 11-504 (physician-psychotherapist privilege). The district court recognized "that absent independent counsel for [the victim], there's a risk that she's going to make a disclosure to the D. A.'s Office. And, by doing that, she may waive her—waive her privilege in regard to some of those matters." Mr. Garcia rendered his services pro bono.

New Mexico case law provides support for the district court's decision. *See Gonzales*, 1996-NMCA-026, ¶ 16 (holding that the victim's medical releases to a detective and the State "terminated the confidentiality of the records and thereby constituted a waiver of her right to rely on the physician-psychotherapist privilege of Rule [11-]504" ). "A privilege does not mean that certain matters may be disclosed to some and withheld from others at the sole discretion of the holder, but rather that a confidence will receive legal protection so long as the holder of the privilege keeps the confidence himself." *Gonzales*, 1996-NMCA-026, ¶ 14 (internal quotation marks and citation omitted); *see also State v. Padilla*, 91 N.M. 800, 802, 581 P.2d 1295, 1297 (Ct. App. 1978) (stating that our courts have long recognized the need to protect the dignity and, where possible, the privacy of rape victims).

In addition, Article 2, Section 24(A)(1) of the New Mexico Constitution and NMSA 1978, Section 30-9-16(B) (1993), provide that "victims[,] as well as defendants[,] have valuable legal and constitutional rights which [the trial judge] must . . . fully consider[] and fairly balance[]." *Gonzales*, 1996-NMCA-026, ¶ 12. The New Mexico Legislature has enacted the Victims of Crime Act (VCA) to implement the provisions of Article 2, Section 24 of the New Mexico Constitution. *See* NMSA 1978, § 31-26-2 (1994). The purpose of the VCA is to ensure, among other purposes, that "victims of violent crimes are treated with dignity, respect and sensitivity at all stages of the criminal justice process" and "victims' rights are protected by law enforcement agencies, prosecutors and judges as vigorously as are the rights of criminal defendants[.]" Section 31-26-2 (B), (C). Under the VCA, a "criminal offense" includes the crimes charged against Defendant in this case: aggravated battery, kidnaping, and CSP. Section 31-26-3(B) (2003). A "victim" is defined as "an individual against whom a criminal offense is committed." Section 31-26-3(F).

We hold that the district court did not err in appointing counsel for the victim in order to assist her in protecting her rights while making statements during discovery procedures.

18

**D. Failing to Recuse**

Defendant asserts that the district court's appointment of Mr. Garcia put into question the district court's bias in favor of the victim. Defendant argues that the district court's act created an appearance of impropriety requiring the district court judge to recuse himself. Defendant argues that the district court judge had already determined that the victim was a "victim" rather than just a witness in the case. We hold that the district court did not err in failing to recuse itself because the district court did not exhibit any bias, impartiality, or prejudice requiring recusal.

We review a district court's decision whether to recuse for an abuse of discretion. *State v. Harris*, 1997-NMCA-119, ¶ 14, 124 N.M. 293, 949 P.2d 1190; *State v. Cherryhomes*, 114 N.M. 495, 500, 840 P.2d 1261, 1266 (Ct. App. 1992). In order to require recusal, bias must be of a personal nature against the party seeking recusal. *State v. Case*, 100 N.M. 714, 717, 676 P.2d 241, 244 (1984). Personal bias cannot be inferred from an adverse ruling or the enforcement of the rules of criminal procedure. *See id.*

As the State points out, in the VCA, it is the New Mexico Legislature that has characterized persons who have alleged certain criminal offenses against them as "victims." As discussed in the previous issue, moreover, New Mexico's rules of evidence, the New Mexico constitution, and New Mexico statutes and case law

19

support the district court judge's decision to appoint Mr. Garcia to represent the victim while she gave statements to the defense so as to protect her right to assert her physician-psychotherapist privilege. The record does not support that the district court demonstrated any personal bias or impartiality.

**E.     Sufficiency of the Evidence**

Defendant asserts that he was denied the opportunity to examine the victim's credibility in a situation where her memory of the events was partial and so clouded by drug and alcohol use that there was insufficient evidence to support his convictions. We are not persuaded.

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

> Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt.

*State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). Defendant does not dispute that the jury was correctly instructed on the elements of the charges. *See State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App.

20

1986) ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

Upon review of the trial testimony, we hold that substantial evidence supports each of the convictions. The victim's description of events is consistent throughout the motion to suppress hearing and at trial. The victim testified that on or about November 5, 2005, in Roswell, New Mexico, Defendant forced her to have sex with him, including oral sex and sexual intercourse, after beating and battering her, and threatening her with a knife, all while she pushed him away, screamed, and cried. The victim testified that Defendant smashed his fist into the bathroom wall when she refused his advances and beat her there, with the result that the victim's nose ring was pulled out, she hit her head and her back on the toilet and the bathtub, and Defendant battered her head with a broomstick that he had broken over his leg. After the beatings and each of the rapes, Defendant followed the victim around the house and refused to let her leave. Defendant threatened to use a knife on the victim if she attempted to do so. The victim feared Defendant because she knew that Defendant had recently been released from prison for stabbing someone in the neck and paralyzing him. He had broken her cell phone, and there was no telephone in the residence. The victim acknowledged that the events occurred while she was running with a bad crowd, taking drugs and drinking, and making poor choices in her life.

Victim's friend testified that she went to the house that weekend while victim was still with Defendant, and victim told her that Defendant had raped her. Victim showed her friend her ripped clothes and the bruises on her body. Victim was "very, very afraid" that Defendant would hurt her if she tried to leave, and, if she did, he would find her and hurt her.

A SANE nurse testified about her examination of the victim. Her testimony and the photographs she took support the victim's version of events regarding the CSPs, the beating, and the battery, including the placement, type, and likely causation for the abrasions and bruises on the victim's body, and to her external vaginal area. The jury saw numerous photographs of the victim's injuries. The SANE nurse testified that a consensual sexual encounter does not have injury, such as the victim's, to the external vaginal area and that her examination of the victim indicated that there had been a struggle with the entry and that the friction of the entry had abraded the skin. The SANE nurse specifically testified that the victim's injuries were consistent with the victim's testimony of the events that led to them.

Two officers testified about the forensic evidence taken from Mr. Smolky's residence. The evidence consisted of blood found in the bathroom where the beating and batteries were alleged to have taken place, blood on the broken broomstick, the broken broomstick parts, a photograph of the hole punched in the bathroom wall, and

DNA evidence taken from a child's bedroom sheets. This evidence further supports the victim's testimony.

Defendant testified at trial and offered another version of events. He testified that the sex was consensual and that the victim willingly stayed with him throughout the weekend. Defendant offered alternate reasons for the broken broom that was allegedly used to hit the victim and the hole he punched in the bathroom wall while enraged. Defendant's friends testified that they did not believe Defendant raped and beat the victim. The jury could reasonably reject Defendant's testimony and the testimony of his friends. *See State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 ("The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict."); *see also State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998) ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

We hold that sufficient evidence supports Defendant's convictions for false imprisonment, second and third degree CSP, aggravated battery with a deadly weapon, and intimidation of a witness.

**CONCLUSION**

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**ROBERT E. ROBLES, Judge**