1998-NMSC-026

965 P.2d 293

STATE of New Mexico, Plaintiff–
Petitioner,

v.

Rodney ARELLANO, Defendant–
Respondent.

No. 24354.

Supreme Court of New Mexico.

Aug. 14, 1998.

Tom Udall, Attorney General, Arthur W.
Pepin, Assistant Attorney General, Santa Fe,
for Plaintiff-Petitioner.

Phyllis H. Subin, Chief Public Defender,
Carolyn R. Glick, Assistant Appellate De-
fender, Santa Fe, for Defendant-Respondent.

OPINION

BACA, Justice.

{1} Pursuant to Rule 12–102 NMRA
1998, the State appeals the Court of Appeals'
opinion in *State v. Arellano*, 1997–NMCA–
047, 123 N.M. 409, 940 P.2d 1204, *cert. grant-
ed*, No. 24,354, 123 N.M. 229, 938 P.2d 204
(1997), that reversed the trial court's denial
of Arellano's motion for a new trial. Arella-
no moved for new trial based on the trial
court's failure to administer the oath found in
UJI 14–123 NMRA 1998, to the jury before
it delivered its verdict. We granted certiora-

ri to consider whether the Court of Appeals erred in reversing the trial court's denial of the motion. We reverse the Court of Appeals' decision and affirm that of the trial court.

## I.

{2} Defendant–Appellant Rodney Arellano (Arellano) was charged with vehicular homicide and other related charges on October 11, 1994. On October 19, 1995, a jury was selected before Judge Maes in Rio Arriba County. At that time, the jurors were voir dired and asked questions regarding their understanding of the jury selection process and its purpose to find impartial persons to try the case. The jurors were also asked whether they understood a juror's duty to determine facts of the case only from the evidence presented in court, and deliver a verdict free from prejudice. The jurors said they understood the jury's duty and purpose.

{3} After the jurors were selected, the court asked the parties about the timing of the jury oath since the case would not be tried until the following week in Santa Fe. The court stated that the usual practice is to await the start of the trial. Defense counsel stated that he had "no real reason" but preferred swearing the jury immediately. The prosecutor favored waiting for the start of the trial. The court then dismissed the jury without being sworn.

{4} The trial then began on October 24, 1995, in a different county, Santa Fe, and before a different judge, Judge Vigil. Although the court did not administer the oath at that time, the court gave the usual pretrial instructions including the jury's duty to decide the case on all the evidence and to follow the law as fair and impartial jurors. On October 25, 1995, Arellano was convicted of vehicular homicide and sentenced to six years in prison. The jury delivering the verdict had not been sworn.

{5} After the trial, Arellano's trial counsel admitted that he was aware, during the trial, that the jury had not been sworn. He admitted that he had researched the issue and concluded that the verdict could be nullified. However, counsel did not call this omission to the court's attention until after the jury rendered its verdict and was finally discharged. Defense counsel admitted that this was a tactical move.

{6} Arellano moved for a new trial on the grounds that the jury had not been sworn. The court recalled the jurors, administered the oath and questioned them. Each juror assured the court that he or she had followed the oath during the trial and deliberations; each stood by the verdict. The court subsequently denied Arellano's motion for a new trial, finding that Arellano knowingly waived the jury oath and that the jury had complied with the oath that the court would have administered. On appeal, the Court of Appeals reversed the trial court's decision and ordered a new trial on the grounds that the trial court had abused its discretion in denying a new trial. The Court of Appeals concluded that the failure to swear the jury was a fundamental error that one could not waive. *Arellano,* 1997–NMCA–047, ¶ 9, 123 N.M. 409, 940 P.2d 1204. This appeal follows.

## II.

{7} On appeal, we determine whether the trial court abused its discretion in refusing to grant Arellano a new trial after jurors returned the verdict because the trial court failed to swear in the jurors during the trial. *See State v. Wittgenstein,* 119 N.M. 565, 569, 893 P.2d 461, 465 (Ct.App.1995). We "will not disturb the trial court's ruling without a clear showing of abuse of discretion." *State v. Lucero,* 110 N.M. 50, 51, 791 P.2d 804, 805 (Ct.App.1990), (citing *State v. Perrin,* 93 N.M. 73, 596 P.2d 516 (1979)).

## III.

{8} Arellano claims that the failure to swear the jury was a fundamental structural error. Arellano argues that because the oath controls how the jury arrives at its verdict, it is not a mere formality that one may waive. Because it could not be determined whether the jury's verdict would have been different if the jury had been sworn, Arellano urges this Court to reverse his conviction. He also argues that although his trial counsel faced a difficult ethical dilemma involving conflicting duties of candor to the court and the duty to

his client, his defense counsel acted in good faith. Moreover, Arellano claims that his counsel's actions are irrelevant to the doctrine of fundamental error. We disagree.

{9} Case law suggests that a jury may be sworn although the trial is in progress. *See State v. Apodaca,* 105 N.M. 650, 654, 735 P.2d 1156, 1160 (Ct.App.1987), *overruled on other grounds, by State v. Garcia,* 110 N.M. 419, 796 P.2d 1115 (Ct.App.1990); *People v. Smith,* 848 P.2d 365, 372 (Colo.1993); *State v. Roberge,* 155 Vt. 121, 582 A.2d 142, 143 (Vt. 1990); *People v. Morales,* 168 A.D.2d 85, 570 N.Y.S.2d 831, 833 (App.Div.1991); *State v. Block,* 170 Wis.2d 676, 489 N.W.2d 715, 718 (Wis.Ct.App.1992); *United States v. Hopkins,* 458 F.2d 1353, 1354 (5th Cir.1972); *Cooper v. Campbell,* 597 F.2d 628, 629 (8th Cir.1979). Moreover, "irregularities in the swearing of the jury may be waived and do not necessarily constitute reversible error." *Apodaca,* 105 N.M. at 654, 735 P.2d at 1160.

{10} In *Apodaca,* the Court of Appeals held that the failure to swear jurors did not require reversal. *See id.* In that case, the defendant moved for a mistrial upon realizing that the jury had not been sworn after the State had already presented its opening statement and its first witness. The trial court refused to declare a mistrial. On the second day of trial, the court administered the oath to the jurors and ordered them to consider the first witness's testimony as if they had been sworn when they heard it. *See id.*

{11} On review, the Court of Appeals stated that "courts have generally held that irregularities in the swearing of a jury may be waived and do not necessarily constitute reversible error." *Id.* at 654, 735 P.2d at 1160. However, the court recognized that "a complete failure to swear the jury cannot be waived and a conviction by an unsworn jury is generally held to be a nullity." *Id.* The court further explained that "[a]lthough a jury's oath is not a mere formality, where the jury is sworn during trial, but prior to commencement or deliberations upon the verdict, the error does not warrant reversal in the absence of prejudice." *Id.* at 654, 735 P.2d at 1160 (citation omitted). The court stated that the oath requires jurors to swear or affirm that they will arrive at a verdict according to the evidence and the law as contained in the instructions of the court. *See id.* Therefore, "[a]lthough the trial court should have administered the oath immediately after the jury was empaneled, the failure to do so did not constitute reversible error." *Id.*

■ {12} Although the jurors here were not sworn until after they rendered the verdict, we find no error. The jury understood the spirit of the oath and purpose of the jury selection process as emphasized in the voir dire procedures and jury instructions. Moreover, like the jurors in *Apodaca,* the jurors in this case swore or affirmed that, in fact, they arrived at a verdict according to the evidence and the law. Thus, they complied with the jurors' oath.

{13} The purpose of administering the oath to jurors is to ensure that the jurors conduct themselves at all times as befits one holding such an important position. *See* UJI 14–123 NMRA 1998. As stated in the Committee Commentary to UJI 14–123, any oath or affirmation that awakens the juror's conscience and impresses his or her mind with their duty will suffice. *See* Rule 11–603 NMRA 1998. Here the district court acted in its discretion in determining that the jury carefully adhered to the requirement to perform their duties as jurors faithfully and impartially. Although the court did not administer the oath in the words of UJI 14–123, the jury understood the spirit of the oath because it was emphasized in the voir dire procedures and jury instructions. In the jury instructions and voir dire questions, the district court impressed upon the jurors the solemnity of the jury selection process and its important purpose to find impartial persons to try the case. The jurors understood their duty to determine facts of the case only from the evidence presented in court, and to deliver a verdict free from prejudice. Moreover, after the jury delivered the verdict, the district court ascertained that the jurors clearly understood the solemnity of the proceedings and had been committed to performing their duty to decide the case on the evidence and follow the law as fair and impartial jurors.

## IV.

{14} Arellano, relying on *Apodaca*, argues that because there was a complete failure to swear the jury, the conviction is a nullity. *See id.* at 654, 735 P.2d at 1160. We disagree.

{15} Here, unlike *Apodaca*, Defendant purposely did not bring the failure to swear the jury to the court's attention until after the verdict. Irregularities in the swearing of a jury may be waived and are not necessarily reversible error. This is not an irregularity, but rather a tactical move. The Defendant in fact waived the right to a sworn jury. Moreover, because Defendant perpetuated the error, the conviction in this case was not a nullity and is harmless error.

## V.

{16} Arellano argues that under the facts and circumstances of this case, he did not waive his right to a fair and impartial jury, sworn under oath. Arellano claims, relying on the language in *Apodaca*, that "a complete failure to swear the jury cannot be waived." *Apodaca* 105 N.M. at 654, 735 P.2d at 1160. We disagree.

{17} "[A] waiver 'must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' " *State v. Gilbert*, 98 N.M. 530, 533, 650 P.2d 814, 818 (1982) (citations omitted) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).

■ {18} Here, Arellano's trial counsel knew of the defect in the proceedings and the right of a sworn jury, yet engaged in games-manship, waiting to see the result of the verdict before notifying the court. Defense counsel admitted to the trial court that he knowingly withheld from the court his awareness the jury was unsworn because it might benefit his client. Defense counsel had a duty to "explain the matter to the extent necessary to permit the client to make informed decisions" about his case. *See* Rule 16–104(B) NMRA 1998. Nothing in the record suggests Arellano's counsel failed to abide by the requirement to "discuss the legal consequences of this conduct." Rule 16–102(D) 1998.[1]

{19} Although we recognize that an attorney has the same duty of candor to the courts that he or she does to his or her clients, *see* Rule 16–102 NMRA 1998; *State v. Tijerina*, 84 N.M. 432, 443, 504 P.2d 642, 653 (Ct.App.1972), *aff'd*, 86 N.M. 31, 519 P.2d 127 (1973), we will not reward a tactical maneuver that flaunts this obligation, and we do not attempt to reconcile this conflict. Under the facts and circumstances of this case, the actions of Arellano's counsel constituted not only a waiver of his client's right to a sworn jury but also a poor tactical move that we will not reward. Moreover, nothing exists in the record to show that the failure to administer the oath until after the verdict in any way prejudiced Arellano.[2] Finally, we note that Arellano's reliance on the language of *Apodaca* is misplaced since the defendant in *Apodaca*, unlike Arellano, alerted the court to the fact the jury was unsworn before the jury rendered its verdict.

## VII.

■ {20} In sum, while we are not minimizing the oath, and respect its function of insuring the solemn duty of the jury, this case is limited to its facts: most notably, the

---

1. This was especially true because Arellano had been very active in the proceedings and submitted numerous pro se filings.

2. In fact, the district court provided more protection than the oath provides because it asked the jury after the fact whether they acted in accord with fairness and justice.
  We also note that the appropriate method for addressing the waiver issue is habeas corpus, and not a direct appeal. *See Bouldin v. Cox*, 76 N.M. 93, 98, 412 P.2d 392, 395 (1966) (stating that "[w]here there is some showing of affirmative waiver, the burden of proof rests on the petitioner to establish that he did not competently and intelligently waive his constitutional right ... and that he must during the hearing on habeas corpus meet the burden.") (quoting *Sandoval v. Tinsley*, 338 F.2d 48, 50 (10th Cir.1964)).

fact that the defense trial counsel knowingly waived the jury oath. Moreover, in this case, the district court properly found that the purposes of the oath were met. We hold that although the oath generally may not be bypassed, if by some inadvertence the court has not administered it to the jury before the jury renders the verdict, it is not necessarily reversible error.

{21} In conclusion, we hold that the Court of Appeals erred in reversing the trial court's denial of Arellano's motion for a new trial. Accordingly, we reverse the Court of Appeals' decision, and affirm that of the district court.

{22} **IT IS SO ORDERED.**

FRANCHINI, C.J., concurs.

SERNA, J. (Concurring in result).

MINZNER and McKINNON, JJ. (Dissenting).

SERNA, Justice (concurring in result).

{23} I concur with the result reached by the Majority, although with somewhat different reasoning. I also wish to address the Dissenting Opinion. The Dissent passionately declares that "the [M]ajority puts New Mexico on the jurisprudential map as the only state in the union where a jury in a criminal case does not have to be sworn," and that the Majority is "without precedent in American jurisprudence." While the Dissent seems to conclude that the jury was completely unsworn, I respectfully disagree. As the Majority notes, I believe that the jury was sufficiently sworn in this case. Although it is true that the jury was not *formally* sworn until after it rendered a verdict, the jury understood, throughout the trial, the essence and substance of the oath because of voir dire procedures, directives given by the judge, and jury instructions, thus meeting the constitutionally required minimum and withstanding fundamental error analysis. To comply with court rules, trial judges must, however, give the standard oath. Had Arellano objected in a timely fashion during the trial, he would have properly preserved his objection for review. If Arellano had properly preserved the error, and had the judge refused, at this point, to formally swear the

jury or declare a mistrial, then this Court would analyze whether reversible error occurred. Such is not the case. This was not a *completely* unsworn jury, and as discussed below, there are at least three appellate courts which addressed comparable situations and, using a similar rationale, reached the same conclusion as I do here, affirming convictions because defendants did not properly preserve an objection to the late or incomplete swearing of juries.

**Arellano failed to properly preserve the error by objecting in a timely manner**

{24} To comply with UJI 14–123 NMRA 1998, trial judges ideally should give the standard oath to jurors at the beginning of the trial. Failure to do so is error which may justify reversal on appeal. *See Santillanes v. State,* 115 N.M. 215, 223, 849 P.2d 358, 366 (1993) (discussing whether a preserved "error was harmless or whether it so undermined the reliability of the conviction or prejudiced the defendant's rights as to warrant a reversal of his conviction"). However, in order to properly preserve the error, Arellano's attorney was required to object upon his discovery that the jury was not formally sworn. *See* Rule 12–216 NMRA 1998 (setting forth preservation requirements); *State v. Sosa,* 1997–NMSC–032, ¶¶ 23–24, 123 N.M. 564, 943 P.2d 1017 (stating that failure to properly preserve defect in jury instructions limits appellate review to fundamental error).

{25} While I believe that it is necessary to note that Arellano's attorney requested that the jury be sworn at the time of jury selection, Arellano's counsel did admit to later withholding from the trial court the fact that the jury had not been formally sworn as a strategical maneuver. Rather than concluding that this constitutes waiver on the part of Arellano, as the Majority does, I believe Arellano's counsel failed to properly preserve the error.

**Voir dire procedures, the judge's directives, and jury instructions met the constitutional minium required by the formal oath and the error survives fundamental error analysis**

{26} "There is no question that the right to trial by a fair and impartial jury is a

fundamental right." *State v. Escamilla,* 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988). The standard jury oath is a part of the assurance to the right to a fair jury.

{27} The Court of Appeals held that, based on *State v. Osborne,* 111 N.M. 654, 808 P.2d 624 (1991), Arellano's "failure to mention the oath in this case does not change the fundamental structural error of the court below." *State v. Arellano,* 1997-NMCA-047, ¶ 9, 123 N.M. 409, 940 P.2d 1204. Further, the Court of Appeals stated, without elaboration, that this failure to swear the jury is fundamental structural error, "error so fundamental that [it] cannot be waived." *Id.* However, *Osborne,* like *Escamilla,* cautions that the doctrine of fundamental error applies only under exceptional circumstances, "if the question of guilt 'is so doubtful that it would shock the conscience to permit the conviction to stand[.]'" *Osborne,* 111 N.M. at 662, 808 P.2d at 632 (quoting *State v. Rogers,* 80 N.M. 230, 232, 453 P.2d 593, 595 (1969)); *see also Escamilla,* 107 N.M. at 515, 760 P.2d at 1281 ("The doctrine of fundamental error is one to be applied only under exceptional circumstances and solely to prevent a miscarriage of justice.").

{28} The United States Supreme Court, in *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), stated that "[a]lthough most constitutional errors have been held amenable to harmless-error analysis," some errors, such as complete deprivation of the right to counsel or trial by a biased judge, will invariably invalidate a conviction. For example, under a harmless-error analysis, the "Fifth Amendment violation of prosecutorial comment upon the defendant's failure to testify would not require reversal of the conviction if the State could show 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Sullivan,* 508 U.S. at 279, 113 S.Ct. 2078 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In *Sullivan,* the Court held that a jury instruction defining reasonable doubt in an unconstitutional manner deprived the defendant of his right to a jury and constituted structural error. *Id.* at 281–82, 113 S.Ct. 2078.

{29} While failure to give the standard oath was error, it was not fundamental error. This is not a case of exceptional circumstances, where the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand. Unlike the jury instruction at issue in *Sullivan,* the failure to give the standard oath did not deprive Arellano of his constitutional right to a jury or his right to a fair trial. Had the judge failed to follow voir dire procedures and failed to give adequate jury instructions and the formal oath, the jury would not be sufficiently informed of its duty, and fundamental error would require reversal.

{30} New Mexico, unlike many other states, does not require the oath by statute; rather, it is mandated by court rules. UJI 14–123 requires the jury to "swear or affirm that [it] will arrive at a verdict according to the evidence and the law as contained in the instructions of the court." According to the committee commentary to UJI 14–123, "[t]his oath or affirmation *or any other oath or affirmation which generally complies with the requirements of Rule 11–603* of the Rules of Evidence must be administered with other pretrial instructions." (Emphasis added). Rule 11–603 NMRA 1998 requires that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."

{31} Prior to jury selection, the clerk of the court questioned the entire panel: "Do you, and each of you, solemnly swear or affirm that you will well and truly answer any and all questions propounded to you by the court or the lawyers under his direction touching upon your qualifications to serve as jurors in this case?" The judge instructed the chosen panel that the purpose of the jury selection process was to find "persons who will fairly and impartially try this case," to ensure that jurors "form no opinions," and to "keep an open mind" until all the evidence and instructions were complete. The judge further advised the jury to "pay close attention" and to "find and determine the facts in this case from the evidence." Significantly,

the judge emphasized that each juror's "special responsibilities as jurors demands that throughout this trial, [he or she] exercise [his or her] judgment impartially and without regard to any biases or prejudices." Jury instruction number nine informed each member of the jury that:

> You are the sole judges of the facts in this case. *It is your duty to determine the facts from the evidence produced here in court*. Your verdict should not be based on speculation, guess or conjecture. Neither sympathy nor prejudice should influence your verdict. *You are to apply the law as stated in these instructions to the facts as you find them,* and in this way decide the case.

(Emphasis added).

{32} Collectively, UJI 14–123 and Rule 11–603 require that each member of the jury swear or affirm that he or she will arrive at a verdict according to the evidence and the law as contained in the instructions of the court administered in a form calculated to awaken his or her conscience and impress his or her mind with the duty to act with integrity. Here, the jury solemnly swore that it truthfully answered all questions propounded to it touching upon its qualifications to serve as jurors. The judge's remarks and jury instructions emphasized the importance of the jury's duties, awakening the jury's conscience and impressing upon it the importance of its role in this process. All of these factors, most of which were present throughout the trial, taken together, satisfy the constitutional minimum normally requiring the standard oath: Arellano's right to a fair and impartial jury.

{33} The Dissent emphasizes that the oath must be given prior to trial in order to safeguard defendants' fundamental constitutional right to a trial by an impartial jury. The Dissent also espouses that the oath "mandates" that the jury pay attention to the evidence and witnesses at all times, particularly with regard to the witnesses' demeanor and credibility. However, the Dissent, by citing with approval to *Apodaca* and *State v. Godfrey,* 136 Ariz. 471, 666 P.2d 1080 (Ariz. Ct.App.1983), also strongly supports the contrary notion that the oath may be given just prior to the jury's deliberations upon the verdict without requiring reversal of a conviction in the absence of prejudice. In other words, although the Dissent accepts a *Godfrey*-type [1] situation, the Dissent does not address how such a late oath, one given after the jury has left the courtroom but barely before deliberations have begun, fulfills the purposes and guarantees of a fair and impartial jury as they are understood by the Dissent to require that the jury attentively and without bias listen to evidence *as it is being presented.* Also on this point, another case relied upon by the Dissent does not seem to support the Dissent's acceptance of a late swearing. *See People v. Pribble,* 72 Mich. App. 219, 249 N.W.2d 363, 366 (Mich.Ct.App. 1976) ("This duty is not just a final duty to render a verdict in accordance with the law, but the duty to act in accordance with the law at all stages of trial. The oath is administered to insure that the jurors pay attention to the evidence, observe the credibility and demeanor of the witnesses and conduct themselves at all times, as befits one holding such an important position. The oath is designed to protect the fundamental right of trial by an impartial jury.").

---

1. I also note that, although relied upon by the Dissent, *Godfrey* is somewhat similar to the present case. The court stated that:

In this case, the *jury was advised of the necessity of taking notes* during trial in the court's preliminary instruction and was *requested to carefully listen* to the evidence by counsel in opening arguments. In addition, *defense counsel did not call to the court's attention that the jury had not been sworn, or suggest that the instructions by the court following the trial were not complete and adequate.* Although the jurors left the courtroom to confer in the jury room, it appears that they were recalled within minutes to be sworn. *Under these facts, we*

hold that the failure to administer the oath prior to trial was a technical violation of Rule 18.6(b) and does not constitute reversible error.

*Id.* at 1081–82 (emphasis added). Although the court goes on to state that "if the oath were not given at all we would have no hesitation in finding reversible error even absent any showing of actual prejudice," the fact that defense counsel apparently was aware that the jury was unsworn and did not bring this to the court's attention served as a factor in the appellate court's determination to uphold swearing the jury at such a late stage.

{34}  In *State v. Saybolt*, 461 N.W.2d 729, 737 (Minn.Ct.App.1990), the oath was not given until just prior to closing arguments, and while the appellate court stated that "[o]aths are not formalities" but "are sacred," the court upheld the conviction. The defendant raised the issue of the unsworn jury in his motion for a new trial, but the court held that the defendant did not object in a timely manner, thus failing to preserve the error. *Id.* Unlike the Dissent, the court in *Saybolt* did not accept that the failure to administer the oath at the outset of trial could be cured by a mid-trial giving of an oath.  *Id.* ("It is clear *that had appellant objected to the late swearing in and asked for a mistrial at this point,* the error would have been preserved and a *new trial would be in order.*") (emphasis added). The court determined that failure to raise the issue at trial forfeits the defendant's right to appeal on this issue, "unless failure to do so would perpetrate a substantial injustice in the sense that an innocent person may have been convicted." *Id.* Thus, as I do, the court analyzed whether the late swearing constituted fundamental error because the objection was not timely:

> Here, there is no showing that the late swearing in of the jury affected the trial in any manner.  There is no claim of actual prejudice, and we find none.  Although the late swearing in was error, we find no substantial injustice, no fundamental error, and no incurable prejudice to appellant. Therefore, appellant is precluded from now raising this issue because of his failure to object or move for a mistrial during the trial when the issue was ripe.

*Id.*

{35}  A recent case from the Supreme Court of Alabama struggled with the same issue before us.  *See In re Deramus v. State,* No. 1970596, 1998 WL 351582, 721 So.2d 242 (Ala. July 2, 1998).  In *Deramus,* the defendant argued that his conviction was void because the clerk administered an oath[2] to the jury venire but not to the petit jury that was selected and empaneled to hear his case as required by statute.  *Id.* at *1, 721 So.2d at 243. As with the present case, the defendant was found guilty and then he moved for a new trial on the basis that the jury was not properly sworn.  *Id.* The Court stated that:

> Although the record does not establish that the oath was given a, second time to the petit jurors who were selected and empaneled to hear [defendant's] case, the record clearly establishes that the oath the clerk gave to the jury venire, which contained all those persons who later served on the petit jury, tracks the language of [both the statute and the court rule].

*Id.* at *2, 721 So.2d at 244. The Court held that "in view of the administration of the previous oath tracking the language of the required oath, we do not view this case as a 'no oath at all' situation."  *Id.* Further, the Court held that the error would be reversible only if the defendant had objected during the trial, thereby properly preserving the alleged error for appellate review.  *Id.*[3]

{36}  Although the Alabama oath contains further references to the duties of the jury than the oath given in this case, I again stress the cumulative effect of the oath given here, remarks by the judge, and the jury instructions.  While Alabama includes statutory provisions which direct the administration of the oath and procedure for appeal, New Mexico statutes contain no similar provisions, either requiring the oath, or requiring an objection to the procedure of the oath during the trial.  However, the facts of *Deramus* and the reasoning of the Court remain relevant for purposes of understanding that the jury was sufficiently aware of their duty and of demonstrating the necessity of a timely objection by Arellano's attorney.

---

2.  The oath given was as follows:
    Do you and each of you solemnly swear or affirm that you will well and truly answer all questions asked of you by the Court as to your general qualifications to serve as a juror and that you will well and truly try all issues and execute all writs of inquiry submitted to you and true verdicts render according to the law and evidence, so help you God?

*Deramus,* 1998 WL 351582, at *1, 721 So.2d at 243.

3.  An Alabama statute requires that no criminal case shall be reversed by any defect in the administration of the jury oath unless an objection was made during the progress of the trial.  *Deramus,* 1998 WL 351582, at *2, 721 So.2d at 244.

{37} At least one other state supreme court displayed reasoning similar to the Majority in this case. In *State v. Mayfield*, 235 S.C. 11, 109 S.E.2d 716 (S.C.1959), the Supreme Court of South Carolina affirmed the defendant's conviction and noted that:

> Appellant's statement that the jury was not sworn stands alone, and is, in our opinion, insufficient to overcome the contrary presumption. But *if indeed the jury was not sworn, that was a fact known to appellant during the trial and which he should then and there have called to the attention of the trial judge.* His contention, made for the first time more than eight years afterwards, comes too late. *One may not take his chance of a favorable verdict and, after an unfavorable one, raise an objection that should have been made before the verdict was rendered.*

*Id.* at 723–24 (emphasis added). This language in *Mayfield* supports the Majority, even though *Mayfield* differs in that the defendant was pro se and the state provided affidavits of three of the jurors, all to the effect that the was jury was actually sworn in defendant's presence. *Id.* at 723.

{38} The jury in this case understood its duty to pay attention to the evidence and to weigh the evidence fairly in the rendering of its verdict. There is only the broad assertion that the oath contained in UJI 14–123, which requires the jury to "swear or affirm that [it] will arrive at a verdict according to the evidence and the law as contained in the instructions of the court," transforms the jury. The specific oath within UJI 14–123, while important, is part of many safeguards which assure that criminal defendants receive a fair trial. If Arellano had properly preserved the error for review by objecting during the course of the trial, and the trial judge refused to cure the error by administering the standard oath, this Court would then address whether the error is reversible. Nevertheless, under a fundamental error analysis, I am confident that the jury verdict in this case "would surely not have been different absent the constitutional error." *Sullivan*, 508 U.S. at 280, 113 S.Ct. 2078.

## Conclusion

{39} As the Dissent also notes, the committee commentary to UJI 14–123 contemplates that *any other oath* that meets particular requirements will suffice. Rule 11–603 also does not adhere to rigid notions of which particular oath must be given, as it states that the oath be "administered in a form calculated" for a particular purpose. The oath given to the jury during voir dire, statements by the judge to the jury, and the jury instructions, taken as a whole, suffice as an oath or affirmation which awakens the juror's conscience and impresses his or her mind with the duty to arrive at a verdict according to the evidence and the law, thus satisfying a constitutional minimum. Failure to give the formal oath was an irregularity, and as such, potentially constituted reversible error, but was not fundamental structural error. Arellano failed to properly preserve this error, and consequently is entitled to appellate review only on the issue of fundamental error. Thus, because the jury was sufficiently impressed with the purpose of the oath and because Arellano was not prejudiced by the technical failure to give the standard oath, I agree that the Court of Appeals should be reversed, and Arellano's conviction should be affirmed.

McKINNON, Justice (dissenting).

{40} The right to a sworn jury in a criminal trial is fundamental to our system of justice. Without expressly rejecting our case law, and by ignoring our mandatory rule, the majority puts New Mexico on the jurisprudential map as the only state in the union where a jury in a criminal case does not have to be sworn before deliberations commence. Its willingness to uphold a conviction by an unsworn jury is without precedent in American jurisprudence. Even more disturbing is the majority's decision to punish Defendant for his attorney's questionable tactic without any evidence that he participated in or was aware of that tactic. Therefore, I dissent.

{41} The effect of today's decision is to relegate a fundamental right to the status of a mere formality or technicality that can be ignored. As the Court of Appeals stated in *State v. Apodaca*, 105 N.M. 650, 654, 735

P.2d 1156, 1160 (Ct.App.1987), *overruled on other grounds by State v. Garcia,* 110 N.M. 419, 422, 796 P.2d 1115, 1118 (Ct.App.1990), "[A] jury's oath is not a mere formality. . . ." With a remarkable degree of consensus, courts across the nation agree that swearing the jury is an integral, essential, fundamental component of a fair trial. *See, e.g., State v. Godfrey,* 136 Ariz. 471, 666 P.2d 1080, 1082 (Ariz.Ct.App.1983) ("[T]he juror's oath is an essential element of the constitutional guarantee to a trial by an 'impartial' jury."); *People v. Pelton,* 116 Cal.App.Supp. 789, 7 P.2d 205, 205 (Cal.App. Dep't Super.Ct.1931) ("The jury must be impaneled and sworn to try a criminal case."); *State v. Martin,* 198 Neb. 811, 255 N.W.2d 844, 848 (Neb.1977) ("[I]n criminal cases it is essential to the validity of the proceeding that the jury should be sworn."); *Commonwealth v. Banmiller,* 393 Pa. 496, 143 A.2d 56, 57 (Pa.1958) (swearing of the jury is "fundamental in nature, and implicit in trial by jury"); 47 Am. Jur.2d *Jury* § 217 (1995) ("In criminal cases, it is essential to the validity of the proceeding that the jury be sworn. . . .")

{42} I am aware of no reported decision in any jurisdiction in the United States that has affirmed a conviction by an unsworn jury. To the contrary, all courts but ours treat a conviction by an unsworn jury as a nullity. *See, e.g., Pelton,* 7 P.2d at 205 ("A conviction by an unsworn jury is a nullity."); *Godfrey,* 666 P.2d at 1082 ("[I]f the oath were not given at all we would have no hesitation in finding reversible error even absent any showing of actual prejudice."); *People v. Pribble,* 72 Mich.App. 219, 249 N.W.2d 363, 366 (Mich.Ct.App.1977) ("[H]ad this trial proceeded to conclusion without a properly impaneled and sworn jury, any resulting conviction would have been invalid."); *Commonwealth v. Robinson,* 317 Pa. 321, 176 A. 908, 909 (Pa.1935) ("[U]nless it affirmatively appears in a criminal case that the jury was sworn as to all defendants, the constitutional [right to trial by jury] is breached."); *Apodaca,* 105 N.M. at 654, 735 P.2d at 1160 ("[A] complete failure to swear the jury *cannot be waived* and a conviction

by an unsworn jury is generally held to be a nullity." (emphasis added)).

{43} The purpose of the oath, especially in a criminal trial, is to awaken the conscience of the jury and impress upon the jurors the serious duty imposed upon them. *See* Rule 11–603 NMRA 1998. The oath is a "solemn promise on the part of each juror to do his [or her] duty according to the dictates of the law to see that justice is done." *Pribble,* 249 N.W.2d at 366. It mandates "that the jurors pay attention to the evidence, observe the credibility and demeanor of the witnesses and conduct themselves at all times, as befits one holding such an important position. The oath is designed to protect the fundamental right of trial by an impartial jury." *Id.* "Most importantly the oath serves as a safeguard of a criminal defendant's fundamental constitutional right to a trial by an impartial jury." *Steele v. State,* 446 N.E.2d 353, 354 (Ind.Ct.App.1983). In recognition of these principles, our Rules require administration of the oath *prior to* trial: "This oath or affirmation or any other oath or affirmation that generally complies with the requirements of Rule 11–603 of the Rules of Evidence *must be* administered with other pretrial instructions." UJI 14–123 NMRA 1998 committee commentary (emphasis added).

{44} The oath must be given *prior to* jury deliberations. *See, e.g., Apodaca,* 105 N.M. at 654, 735 P.2d at 1160 ("[W]here the jury is sworn during trial, *but prior to commencement of deliberations upon the verdict,* the error does not warrant reversal in the absence of prejudice." (emphasis added)); *Godfrey,* 666 P.2d at 1082 (affirming conviction where "jurors were sworn *prior to their deliberations*" (emphasis added)). When members of the venire take the oath, their status as jurors commences, collectively they become a jury, and double jeopardy attaches. *See Crist v. Bretz,* 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Prior thereto, they are only members of the venire and any conviction by them is a nullity. *See Pelton,* 7 P.2d at 205.

{45} According to the majority,[1] *Defendant* waived his right to a properly sworn

---

1. The argument of the concurrence that the De-    fendant failed to timely object is but another way

jury. However, it is undisputed that his counsel requested that the jury be sworn when it was originally empaneled in Tierra Amarilla. The State objected, apparently preferring that the jury be sworn several days later in Santa Fe, and the empaneling judge agreed. When trial commenced with a different judge presiding, the jury was not sworn until after the verdict, and after Defendant's counsel had alerted the trial court. Under these circumstances, Defendant did not waive his right to a sworn jury, but perhaps the State inadvertently invited this error.

{46} There is no evidence that Defendant knowingly and intelligently waived his right to a sworn jury.[2] *Cf. State v. Gilbert,* 98 N.M. 530, 534, 650 P.2d 814, 818 (1982) (requiring voluntary, knowing, and intelligent relinquishment or abandonment before right to counsel is waived). The majority mistakenly points to Rule 16–104(B) NMRA 1998 as a basis for presuming Defendant was an active participant in his attorney's trial tactic. This Rule only requires that a lawyer explain "general strategy and prospects of success" of litigation, not a trial tactic such as this one. Rule 104 comment ("[A] lawyer ordinarily cannot be expected to describe trial . . . strategy in detail."). More importantly, there is no evidence that any explanation of the tactic was ever given to the Defendant.

{47} Relying on Rule 16–102(D) NMRA 1998, the majority speculates that the Defendant approved the tactic of his attorney. However, this rule forbids an attorney from misleading the court or counseling a client to mislead the court. The comment to the rule does not require an attorney to "discuss the legal consequences" of misleading the court, since the attorney is specifically forbidden from engaging in such conduct. How any of this establishes that such communications oc-curred is unclear, and certainly is not established by the record.

{48} Finally, and speculatively, the majority finds it significant that the Defendant filed numerous pro se motions and therefore was a party to his attorney's trial tactic. It neglects to state that the Defendant's first lawyer urged him to stop this activity because they were "not good motions and . . . [were] significantly impairing [his] defense." Again, the filing of pro se motions is hardly evidence of a knowing and intelligent waiver of the fundamental right to be tried by a sworn jury. *Cf. Gilbert,* 98 N.M. at 534, 650 P.2d at 818.

{49} The majority places the burden on *Defendant* to prove that he did *not* waive his constitutional right to a sworn jury, and that the appropriate method for litigating this issue is by a habeas corpus proceeding, not by a direct appeal. (*See* Maj. op. at 296 n. 2.) However, our case law instructs that it will never be presumed that a criminal defendant waived a fundamental constitutional right. *See, e.g., State v. Lewis,* 104 N.M. 218, 221, 719 P.2d 445, 448 (Ct.App.1986) (Without "clear showing" of waiver of fundamental constitutional right, "the court on appeal will indulge in every reasonable presumption *against* the waiver of [the] right, and will not presume acquiescence in its loss." (emphasis added)). To establish the waiver of a fundamental constitutional right, the *State* must carry a heavy burden of proving a knowing and intelligent relinquishment of that right. *See State v. Boeglin,* 100 N.M. 127, 133, 666 P.2d 1274, 1280 (Ct.App.1983) ("[T]he burden of proof to establish a waiver of a constitutional right rests upon the State. . . . [T]he record [must] indicate[ ] a defendant's clear manifestation by words and actions of a voluntary choice."); *see also Lewis,* 104 N.M. at 220, 719 P.2d at 447 ("The constitutional right to the assistance of counsel remains

of saying that Defendant *waived* his right to object on appeal because he did not "preserve" the error. In addition, both the majority and the concurrence strongly rely on counsel's failure to timely alert the trial court of the error. For these reasons, any reference to "the majority" includes the Special Concurrence.

**2.** With respect to the concurrence's similar preservation argument, we point out that any timely objection would have resulted in the jury's being sworn. Bringing the error to the court's attention before deliberations would certainly result in the court's swearing the jury. Thus, as a practical matter, there would be no "error" for review on appeal. Where the violation of a right is virtually immune from review, the right is illusory.

with an accused until it is affirmatively shown in the record that defendant's right has been intelligently, understandingly and competently waived by him."). Furthermore, the trial court was duty-bound to empanel a sworn jury prior to jury deliberations, irrespective of counsel's silence.[3] *See* UJI 14–123 committee commentary (requiring administration of oath "with other *pretrial* instructions" (emphasis added)).

{50} Relying on *Bouldin v. Cox*, 76 N.M. 93, 98, 412 P.2d 392, 395 (1966), the majority asserts that the waiver issue should be raised in a habeas corpus proceeding rather than on direct appeal. In *Bouldin*, after being advised of his right to counsel, the *defendant* declared three times in open court that he did not want counsel. *See id.* On this basis, the trial court found that he had waived his right to counsel. *See id.* Finding substantial evidence to support the waiver, we denied habeas corpus relief.

{51} *Bouldin* does not require that the right to counsel issue be litigated in a habeas proceeding. Ironically, in *Apodaca*, which is cited or relied upon repeatedly by the majority, the sworn jury issue *was raised on direct appeal*, as it is here on a writ of certiorari. 105 N.M. at 651, 735 P.2d at 1157. Further, unlike *Bouldin*, where the defendant's own words established a clear waiver, the only basis here for finding a waiver was *counsel's* trial tactic.

{52} The effect of today's ruling is to deprive Defendant of a fair trial because of his counsel's conduct and to ignore *Apodaca's* admonition that "a complete failure to swear the jury [before deliberations] cannot be waived ..." 105 N.M. at 654, 735 P.2d at 1160. Arguably, counsel may have violated his obligation to perform competently by not insisting that the jury be sworn at the commencement of trial or at least prior to deliberations. Rule 16–101 NMRA 1998 (competence). He may also have violated his obligation of candor toward the court. Rule 16–303(A) NMRA 1998 (candor toward the tribunal). Indeed, he may be subject to

sanctions under our Disciplinary Rules. *But* in the absence of evidence that *Defendant* knowingly participated in this tactical decision, there is no constitutional or legal justification to deny him a properly sworn jury.

{53} The issue of the propriety of defense counsel's conduct is separate from the question of whether an unsworn jury's "verdict" is valid. His tactical decision does not alter the fact that no oath was administered prior to deliberations, as required by our Rule 14–123, the reasoning of *Apodaca*, 105 N.M. at 654, 735 P.2d at 1160, and every other decided case in the United States.

{54} There will seldom be evidence that the client has participated in trial tactics of counsel. But the answer to this void is not a radical departure from due process. The price for adhering to principle and the established law here is the cost of a new trial, but this cost is minuscule when compared to the deprivation of one of Defendant's fundamental rights. We must not affirm a conviction at any price, but instead be vigilant in the defense of our constitutional rights, one of them being the right to a fair trial. By attributing the tactics and strategy of his counsel to the Defendant the majority has deprived the Defendant of due process of law.

{55} Therefore, I respectfully **DISSENT**.

MINZNER, J., concurs.

---

**3.** The trial court recognized this duty: "This court accepts the responsibility for the jury not being sworn in."