This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.                    **NO. 30,051**

**MATTHEW WIGGINS,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, LLC
Robert E. Tangora
Santa Fe, NM

for Appellant

        **MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant appeals his convictions for first degree kidnaping, second degree criminal sexual penetration, false imprisonment, and the enhancement of his sentence for being a habitual offender with two prior felony convictions. Defendant raises two issues. First, he argues that his trial counsel was ineffective under the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. Second, Defendant contends that the district court erred in denying his trial counsel's motion to withdraw. Because we conclude that Defendant has not made a prima facie showing of ineffective assistance, and because the district court did not abuse its discretion in denying the motion to withdraw, we affirm.

The factual and procedural background is familiar to the parties. Because this is a memorandum opinion, we provide details as necessary to our discussion of the issues raised by Defendant.

**DISCUSSION**

**Defendant Has Not Made a Showing of Ineffective Assistance of Counsel**

Defendant first argues that he has raised a prima facie case for ineffective assistance of counsel and therefore, we should remand this case to the district court for an evidentiary hearing on the issue. Defendant asserts that trial counsel was ineffective because: (1) he revealed Defendant's pre-trial incarceration to the jury panel, and (2) he had a conflict of interest. See generally State v. Martinez, 2001-

NMCA-059, ¶¶ 23, 24, 130 N.M. 744, 31 P.3d 1018 (recognizing that the right to effective assistance of counsel includes both the right to counsel of reasonable competence, as well as the right to counsel's undivided loyalty). We take each argument in turn.

**1. Trial Counsel's Reference to Defendant's Pre-Trial Incarceration Did Not Amount to Ineffective Assistance of Counsel**

When a defendant argues counsel was ineffective based on incompetence, counsel is presumed competent unless the defendant shows (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that the defendant was prejudiced by the deficient performance. *State v. Trujillo*, 2002-NMSC-005, ¶¶ 37-38, 131 N.M. 709, 42 P.3d 814; *State v. Plouse*, 2003-NMCA-048, ¶ 6, 133 N.M. 495, 64 P.3d 522. The burden of proof is on the defendant to prove both prongs. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.

In this case, Defendant contends that trial counsel's reference to his pre-trial incarceration was the "verbal equivalent of Defendant appearing before the jury in shackles" thus compromising his presumption of innocence. As a result of counsel's allegedly deficient performance, Defendant claims he was prejudiced. Our review of the record, however, demonstrates that rather than deficient performance, a plausible, rational strategy or tactic more appropriately explains the conduct of trial counsel in this case. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666

3

("On appeal we will not second guess the trial strategy and tactics of the defense counsel." (internal quotation marks and citation omitted)). We explain.

In reaching our conclusion that trial counsel's performance did not fall below minimum professional standards, we consider counsel's reference in context. At the beginning of the voir dire proceedings, the district court asked the prospective jurors whether any of them were familiar with Defendant. If a prospective juror answered "yes," the court followed up by asking the juror whether there was anything about his or her knowledge or familiarity with Defendant that could affect his or her ability to be fair and impartial. During the course of this exchange, the court addressed Juror No. 41 and asked, "[Juror] No. 41, . . . you are shaking your head, are you telling me you [can not] be fair?" In answer to the court's question, Juror No. 41 responded, "I work at the detention center, and it would be very difficult." The court said "all right" and continued its inquiry with other prospective jurors.

Later in the proceedings, Defendant's trial counsel was permitted to voir dire the jurors. He asked how many of the prospective jurors knew the alleged Victim. Trial counsel then specifically addressed Juror No. 41 about her earlier response to the court's inquiry. He said:

> [Juror No. 41], I am going to have to pick on you and [you are] going to have to excuse me. [Juror] No. 41, you stated earlier that you work in the detention center, correct? So you sort of poisoned the well. . . . There is always somebody that catches this, so I now have to grab it by

4

> the you-know-what and just deal with it. My client has been in jail waiting for this trial. [Juror No. 41] let the cat out of the bag. It's something we have to deal with. Knowing that my client has been in the San Juan County Detention Center awaiting this trial, is any one going to say, "Oh, let's hold it against him and find him guilty?"

From there, trial counsel questioned several jurors about whether they could remain fair and impartial and specifically asked whether they would "hold it against [Defendant] that he was in jail." Trial counsel emphasized the importance of being fair and impartial to Defendant and to Victim as well. Turning to Juror No. 41, he asked her,

> You know [Victim] from being in jail, too. Correct? So now that the cat's totally out of the bag—the alleged Victim was in jail. Is anyone going to hold that against her? Because remember, we are here to be fair and impartial to both sides, not just to [Defendant]. And not just to the State. We want to do the right thing here, folks.

Based on the foregoing, we disagree with Defendant's assertion that trial counsel was ineffective because he "revealed to the panel that . . . Defendant had been incarcerated while awaiting trial." We observe that, although not expressly stated, Juror No. 41's answer to the district court that she could not be fair because of the nature of her job effectively informed the jury panel that she recognized Defendant because he had been incarcerated at the detention center where she worked. It appears that when the opportunity arose, trial counsel attempted to minimize the impact of Juror No. 41's disclosure by telling the jury panel that Defendant and Victim had both

5

been in jail and by questioning the jury specifically about whether they could be fair and impartial to all the parties in the case. Accordingly, we conclude that trial counsel's reference to and discussion about Defendant's pre-trial incarceration was a matter of trial strategy and tactics done in an effort to put the issue into perspective and to ensure that the jury would be fair in deciding the case. *See Hester*, 1999-NMSC-020, ¶ 11 ("It is not the role of [the appellate courts] to second guess trial tactics."). Based on the circumstances surrounding the exchange between the district court and the jury panel, and between trial counsel and the jury panel, we determine that Defendant has failed to make a prima facie showing of ineffective assistance based on trial counsel's reference to his pre-trial incarceration. *See State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992) (holding that a prima facie case of ineffective assistance of counsel is not made when there is a plausible, rational strategy or tactic to explain the conduct of counsel).

**2.     There Was No Conflict of Interest**

We next address Defendant's argument that his trial counsel was ineffective based on a conflict of interest. This argument implicates the Sixth Amendment's guarantee to the right to counsel's undivided loyalty. *See Martinez*, 2001-NMCA-059, ¶ 24. We note first that the analytical framework for a claim of ineffective assistance of counsel based on a conflict of interest differs from that of an ineffective

6

assistance of counsel claim based on a lack of reasonable competence. *Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657. In this regard, when the record demonstrates an actual conflict of interest, prejudice is presumed, and the matter is appropriately addressed for the first time on appeal. *Martinez*, 2001-NMCA-059, ¶¶ 24, 26. Thus, to invoke the presumption of prejudice, there must be an actual, active conflict that adversely affects counsel's performance. *Id.* ¶ 24. On the other hand, when the record reveals the possibility of an actual conflict of interest with an adverse effect, remand is appropriate for an evidentiary hearing. *Id.* ¶ 37. The mere possibility of a conflict or a theoretical division of loyalties alone, however, is insufficient to support a claim of ineffective assistance of counsel. *Id.* ¶ 24. We review de novo whether there is a conflict of interest and whether Defendant is entitled to a presumption of prejudice. *See Churchman v. Dorsey*, 1996-NMSC-033, ¶ 11, 122 N.M. 11, 919 P.2d 1076. We now turn to a determination of whether there was an actual conflict or the possibility of an actual conflict in this case.

Our Supreme Court has recognized two general categories of conflict-of-interest cases: (1) "when counsel represents two clients with divergent interests in the same matter[,]" and (2) "when the interests of the client and the attorney diverge" because "counsel's duty of undivided loyalty is . . . compromised, such as by personal interests or by loyalties to another party, [in which case] counsel

7

must avoid representing the client." *State v. Joanna V.*, 2004-NMSC-024, ¶ 6, 136 N.M. 40, 94 P.3d 783 (internal quotation marks and citation omitted). Here, Defendant relies on the second category of cases—ones involving divided loyalty. Defendant identifies three sources of the conflict of interest that he contends arise from the docketing statement: (1) counsel's failure to identify any issues on appeal and his failure to address the State's sentencing memorandum, (2) trial counsel's "contempt for Defendant," and (3) counsel's "affinity" toward a trial judge who recused from this case prior to trial. For the reasons that follow, we disagree with Defendant that a conflict exists in any of these situations.

We begin by addressing Defendant's argument that trial counsel was ineffective because he "identified no issues on appeal" and because he failed to adequately address the State's sentencing memorandum. It is well established that counsel can breach his duty of loyalty to a client if his performance falls below an objective level of competent legal representation such that the incompetent representation prejudices the client's case. *See Duncan v. Kerby*, 115 N.M. 344, 349, 851 P.2d 466, 471 (1993). At the outset, we note that counsel has no duty to raise issues absent any meritorious reason to do so. *See State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct. App. 1990) (holding that trial counsel is not ineffective for failure to make a motion that is not supported by the record). Here, however, we need not address counsel's failure

to identify issues on appeal because trial counsel put forward an ineffective assistance claim on Defendant's behalf and also presented Defendant's view that "he is a victim of racism and prejudice." *See State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) (providing that counsel should advance arguments desired by the client); *State v. Boyer*, 103 N.M. 655, 658-59, 712 P.2d 1, 4-5 (Ct. App. 1985) (same). In any event, even if trial counsel did not identify any meritorious issues in the docketing statement, Defendant has failed to show that this error impacted his subsequent appellate representation. *See generally* Rule 12-213(A)(3) NMRA (providing that cases assigned to the general calendar are no longer restricted to briefing only those issues raised in the docketing statement). With regard to trial counsel's purported inadequate response to the State's sentencing memorandum, Defendant identifies no specific inadequacies, and we therefore do not consider this argument on appeal. *See generally In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct. App. 1992) ("This [C]ourt will not search the record to find evidence to support an appellant's claims.").

We next turn to Defendant's contention that his trial counsel was ineffective because counsel's "contempt for Defendant is apparent in the [d]ocketing [s]tatement." In the docketing statement, counsel describes Defendant as "an African-American . . . a large young man who presents himself with the same baleful

9

menacing glare of Sonny Liston, circa 1962[.]" To evaluate whether this statement actually demonstrates that counsel has "contempt for Defendant," we must examine the context in which it was made. Counsel's reference to Defendant's race immediately precedes trial counsel's explanation that Defendant believes himself to be the victim of racism. Indeed, the sentence continues, stating that Defendant "is convinced he is a victim of racism and prejudice." We note that counsel made the same comparison of Defendant to Sonny Liston at the sentencing hearing. In describing Defendant at the hearing, counsel stated that Sonny Liston was a powerful and prominent former heavy-weight boxer and suggested that perhaps Defendant had been more harshly judged by the jury because of his similarly menacing appearance. It appears that trial counsel's references to Defendant's physical appearance at the sentencing hearing, while perhaps unorthodox, reflect counsel's trial strategy and that the comments were made as a basis for requesting leniency. In that regard, we view the same statements made in the docketing statement as trial counsel's effort to explain why the jury might have convicted Defendant and to assist appellate counsel in finding a viable argument on appeal.

Lastly, we turn to Defendant's argument that counsel's "affinity" toward a particular district court judge who recused from his case prior to trial compromised counsel's loyalty to Defendant. In the docketing statement, counsel states that during

sentencing Defendant "spent the majority of forty minutes claiming the [previous trial judge] is a racist." Counsel then goes on to state that he found Defendant's "diatribe to be offensive" and felt "honor-bound" to express his view that the judge "is a patient gentlem[a]n without a racist bone in his body." We are not persuaded by Defendant's argument that counsel's statements resulted in the possibility of compromised loyalty to Defendant.

As an initial matter, we note that Defendant cites no authority to support the contention that a trial counsel's favorable view of a particular judge can present an actual conflict of interest when such view is not shared by the client. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (providing that when an appellant cites no authority to support a specific proposition, the appellate court presumes that no supporting authority exists). Notwithstanding Defendant's lack of citation to authority, our review of the record reveals that despite trial counsel's personal view of the judge, he successfully moved to excuse the judge from presiding over Defendant's case based on Defendant's belief that the judge was a racist.[1] As such, trial counsel had no duty or responsibility to the judge that could have presented an actual conflict with the interests of his client. *See State v.*

---

[1] In recusing himself, the judge indicated that his recusal was not based on the allegations in Defendant's motion, but instead to ensure that Defendant would be made to feel that he had the best chance possible in his trial.

11

*Santillanes*, 109 N.M. 781, 783, 790 P.2d 1062, 1064 (Ct. App. 1990) (stating that "[t]he test for determining the existence of an actual conflict is whether counsel *actively represented conflicting interests* that adversely affected his performance" (emphasis added) (internal quotation marks and citation omitted)); *cf.* Rules 16-107 to 16-112, 16-118 NMRA (providing examples of conflicts of interests that may warrant disqualification).

It appears that in this case, trial counsel apparently felt an obligation to express his opinion of the judge in light of his duty of candor to this Court. *See generally State v. Arellano*, 1998-NMSC-026, ¶ 19, 125 N.M. 709, 965 P.2d 293 (recognizing "that an attorney has the same duty of candor to the courts that he or she does to his or her clients"); *see also* Rule 16-303 NMRA (candor toward the tribunal). While counsel's view of the recused judge differed from Defendant's view, counsel nevertheless ensured that Defendant's view of the judge and its alleged effect on trial counsel was presented in the proceedings below, as well as in the docketing statement. *See Franklin*, 78 N.M. at 129, 428 P.2d at 984; *Boyer*, 103 N.M. at 659, 712 P.2d at 5 (providing that counsel should advance arguments desired by the client).

Based on the foregoing, we conclude that the record presents neither an actual conflict of interest in trial counsel's representation of Defendant, nor the possibility of a compromised duty of loyalty to Defendant. Absent a prima facie case of

ineffective assistance of counsel, Defendant's claim of ineffective assistance of counsel is more properly brought through a habeas corpus petition. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

**The District Court Did Not Err in Denying Counsel's Motion to Withdraw**

Defendant argues that the district court erred when it denied his appointed trial counsel's motion to withdraw. We review the district court's ruling for an abuse of discretion. *See State v. Lucero*, 104 N.M. 587, 592, 725 P.2d 266, 271 (Ct. App. 1986) (providing that the decision of whether to appoint substitute counsel lies within the discretion of the district court). An indigent defendant who has a right to appointed counsel does not also have a right to the appointment of counsel of his or her choice. *Id.* To warrant the dismissal of appointed counsel, a defendant must show that the failure to appoint substitute counsel will result in ineffective representation or prejudice to the defense. *Id.* In addition, a district court's findings of fact on an ineffective assistance of counsel claim are reviewed for substantial evidence. *Duncan*, 115 N.M. at 347, 851 P.2d at 469. We consider the evidence that supports the district court's ruling, and we will "draw all inferences and indulge all presumptions in favor of the district court's ruling." *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856.

In the present case, Defendant was initially represented by a different, appointed attorney. Less than a week before the originally scheduled trial in November 2008, counsel moved to withdraw based on a deterioration of the attorney-client relationship. The district court granted counsel's motion, and Defendant subsequently agreed to being represented by the trial counsel presently at issue, who had also recently represented Defendant in a prior case. As with the first appointed counsel, one week before the scheduled trial, the present trial counsel moved to withdraw, also based on an asserted deterioration of the attorney-client relationship. Specifically, the motion to withdraw stated that Defendant "believes that [counsel] is trying to send him to prison and that he is racist" and "the attorney[-]client relationship has been destroyed."

At a hearing on the motion, the district court asked Defendant for specific complaints about his counsel. The court heard from both Defendant and trial counsel and ultimately concluded that any further delay would impact Defendant's speedy trial rights and would allow the State to get further DNA testing, which would be against Defendant's interests. The district court further emphasized to Defendant that he did not have the right to pick and choose an attorney and that his trial counsel had done a competent job in both Defendant's other case and the one that was currently before

the court. Finally, the court opined that Defendant's desire to switch attorneys was a delay tactic in light of the upcoming trial and denied the motion to withdraw.

We conclude that substantial evidence supports the district court's ruling that Defendant received effective assistance of counsel and hold that the district court properly denied counsel's motion to withdraw. *Lucero*, 104 N.M. at 592, 725 P.2d at 271 (to warrant the dismissal of appointed counsel, a defendant must show that the failure to appoint substitute counsel will result in ineffective representation or prejudice to the defense). Because trial counsel's representation was adequate and because the appointment of new counsel could have been potentially prejudicial to Defendant, we conclude that the district court did not abuse its discretion in denying counsel's motion to withdraw.

**CONCLUSION**

For the reasons set forth above, we hold that trial counsel was not ineffective and that the district court did not abuse its discretion in denying trial counsel's motion to withdraw. We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

15

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**


_____
**JONATHAN B. SUTIN, Judge**